## MATTER OF RONALD BROWN

[No. 126, September Term, 1971.]

*Decided December 16, 1971.*

The cause was argued before ANDERSON, MOYLAN and GILBERT, JJ.

*Gerald A. Smith,* for appellant.

*John P. Stafford, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Bright Walker, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

Sections 70 through 70-26 of Article 26 of the *Annotated Code of Maryland,* implemented by Chapter 900 of the *Maryland Rules of Procedure,* establish the machinery and the procedures for dealing with Juvenile Causes. They set forth, *inter alia,* specific guidelines for determining whether a child who has not yet reached his 18th birthday and who has engaged in conduct which amounts to a transgression of the criminal laws shall be proceeded against in the Juvenile Court or shall have jurisdiction in his case waived so that he may be proceeded against in the Criminal Court. Maryland Rule 911a provides, in pertinent part:

> "A waiver hearing shall be initiated by the State's Attorney."

The narrow question presented upon this appeal is When may the State's Attorney initiate such a waiver hearing? or At what point is his option tolled so that he

is thereafter foreclosed from pressing for such a hearing?

Article 26, Section 70-16, would seem to set the outer limits with unequivocal precision:

> *"After a petition has been filed alleging delinquency and before the adjudicatory hearing* the court, after the notice prescribed by the Maryland Rules, may hold a waiver hearing and waive the exclusive jurisdiction conferred by § 70-2, and may order the child or minor held for trial under the regular procedures of the court which would have jurisdiction over the offense if committed by an adult."
> (Emphasis supplied)

The question in this case is Did the initiation of the waiver proceeding come too late? The resolution of the issue turns upon the meaning to be given to the phrase "the adjudicatory hearing."

The chronology is clear. On December 31, 1970, two petitions were filed against the appellant, Ronald Brown, in the Division for Juvenile Causes of the Circuit Court for Baltimore City. Those petitions urged that he was delinquent because of an alleged assault perpetrated by him on November 10, 1970, and because of an alleged robbery perpetrated by him on October 29, 1970. Counsel was appointed for him on the day that the petitions were filed. A hearing on the merits of the delinquency charges was conducted before Master Bernard M. McDermott on January 6, 1971. At that hearing, the appellant entered, as a plea, a general denial of the allegations made by the petitioner. The State put on all of its witnesses to prove the allegations. The appellant testified in his own behalf. At the conclusion of all the evidence, Master McDermott found the appellant to be delinquent, but withheld disposition pending an evaluation at the Maryland Children's Center.

After all of the evidence had been adduced by both

sides on the merits of the delinquency charges but before the hearing was adjourned, Master McDermott received the report of a Mr. Keller, the probation officer to whom the appellant had been assigned as a result of a prior adjudication of delinquency. As a result of that earlier determination, the appellant had been committed to the Maryland Training School for Boys. The report of the probation officer indicated that the appellant had been "disruptive, assaultive, uncooperative and did not seem able to respond to the environment of a juvenile institution." There was an indication in that report that the appellant was one of a group of boys involved in a sexual assault upon two other students. As a result of his disruptive behavior at the Maryland Training School for Boys, the appellant had been transferred to the Maryland Children's Center. At that point, the Assistant State's Attorney indicated that he had not been aware of those facts. In the light of those disclosures, the Assistant State's Attorney then requested that the court waive jurisdiction. The appellant's counsel urged that the court not act upon the State's request until after the full evaluation at the Maryland Children's Center had been made. In that posture, the hearing adjourned. The disposition hearing was scheduled for January 26, 1971.

With all signs, including the recommendation of the Maryland Children's Center and the prior juvenile record of the appellant, pointing strongly toward the unamenability of the appellant to the juvenile process, Master McDermott, upon the resumption of the case on January 26, 1971, struck out his earlier finding of delinquency and recommended that the Juvenile Court waive jurisdiction in the case so that the appellant could be proceeded against in the Criminal Court. On the following day, January 27, 1971, the appellant filed an exception to the findings and the recommendations of the Master. The main thrust of the exception was that the initiation of the waiver proceeding had come too late. A hearing on the exception was set before the trial judge on March 5, 1971.

At that hearing, the trial judge ruled against the appellant on the question of the non-timeliness of the commencement of the waiver proceeding. The judge then heard testimony on the merits on the waiver question and ruled thereon that jurisdiction be waived. We are not here concerned with that decision on the merits (it appears clearly to have been a proper one *on the merits*). We are concerned only with the procedural question of whether the commencement of the waiver proceeding itself came too late.

The appellant's argument is that the entire question of possible waiver did not arise until after the adjudicatory hearing had been completed, let alone *before* that adjudicatory hearing had been commenced. He urges that the taking of all testimony on the merits of the delinquency question had been completed and the finding of delinquency had been made 1) at the very least, some minutes before the testimony from the probation officer on the question of disposition triggered the Assistant State's Attorney belatedly to urge waiver upon the court and 2) at the most, twenty days before the Master undertook to consider the waiver question formally. His position is that the State did not have the foresight to raise this issue preliminarily, as the law requires, but injected it into the case as an afterthought—as something prompted only by information fortuitously adduced in the dispositional phase of the case. He argues that under no construction of the words of the statute can a waiver hearing be deemed to have been held "before the adjudicatory hearing."

The argument of the State is best put by the words of the trial judge in denying the appellant's exception to the recommendation of the Master:

> "It is my feeling that under the law there has never been a final adjudication in this matter, and the exhibit which you have entered in with the State in introducing, makes that clear because under the law a master does not make a

finding, a master does not make a disposition, only a judge does that. A master's function is to hear testimony and on the basis of the testimony he hears to make a recommendation to the judge, and the judge is free to either adopt the recommendation, reject it, or modify it. And as a matter of fact, although I in many cases do adopt the recommendations of the masters, I have rejected some, and I have modified some. I have not just blindly adopted all of the recommendations that have come to me. Now, the exhibit that has been introduced by both of the parties here today is a recommendation. In fact, this is exactly the language that Master McDermott uses, he says I found waiver to be in order and advised counsel of this finding and recommendations to be submitted to the court and an exception was filed etc., and he talks further in his memorandum about waiver of jurisdiction and suggesting it and where in one case he does not recommend it and so on. His whole memorandum that has been introduced talks of his recommendation to me. This recommendation to this point has not been acted upon."

The position of the State and of the trial judge is that "an adjudicatory hearing" is tantamount to an "adjudication." The argument runs that the Master is not legally empowered to "adjudicate" but simply to make tentative findings and recommendations based upon those findings; that it is only when the judge places his imprimatur upon the recommendation by confirming it or, in the alternative, modifies it or rejects it that an "adjudication" has occurred. The State urges, as the judge ruled below, that the question of waiver is ripe, therefore, to be raised and to be decided until there has been a final adjudication at the nisi prius level.

It is unnecessary for us to decide when an "adjudication" has been made, since we are persuaded that, in no

event, is an "adjudicatory hearing" tantamount to an "adjudication." Section 70-1 (Definitions) provides in sub-section (x):

> " 'Adjudicatory hearing' means a hearing to determine the truth of the allegations in the petition."

Section 70-17 (Adjudicatory hearing; disposition hearing) provides:

> "After a petition has been filed and subject to the provisions of § 70-16 of this subtitle, the court shall hold an adjudicatory hearing after which, if the allegations are sustained, the court shall hold a disposition hearing."

Maryland Rule 912 (The Adjudicatory Hearing) provides:

> "a. *Scheduling the Hearing.*
> The date for an adjudicatory hearing shall be set promptly after the petition is filed. If the child who is the subject of the petition is in shelter care or detention, the hearing shall be given priority and shall be scheduled for the earliest possible date.
>
> b. *Preparation and Presentation of Evidence.*
> In a delinquency case, the State's attorney shall prepare and present the testimony in behalf of the petitioner unless excused by the court. In all other cases the appropriate governmental or social agency, the petitioner or other persons authorized by the court shall prepare and present the evidence in support of the petition.
>
> c. *Evidence.*
> The rules of evidence applicable to criminal cases shall apply to delinquency hearings. The rules of evidence applicable to civil cases shall apply to all other hearings.

d. *Findings.*

1. Determination—Statement of Grounds.
Upon the conclusion of the adjudicatory hearing, the court shall announce and dictate to the court stenographer or reporter or prepare and file with the clerk a brief 'statement of the grounds upon which it bases its determination.

2. Limit on Continued Detention.
If, after such a determination, the dispositional hearing is not to be held immediately and the child is in detention or shelter care, the court shall determine whether he shall be released or continued in detention or shelter care which shall not be for more than thirty (30) days."

Maryland Rule 917 (Right to Remain Silent) goes on to provide:

"A child may remain silent as of right *during an adjudicatory hearing* on an allegation of delinquency and shall be so advised."
(Emphasis supplied)

We think it within the clear contemplation of the Maryland law that the "adjudicatory hearing" is that phase of the total proceeding whereto witnesses are summonsed; whereat they are sworn, confronted with the alleged delinquent, examined and cross-examined; whereat their demeanor is observed, their credibility assessed and their testimony weighed; whereat the testimony is subject to the rules of evidence and is transcribed by a court reporter; whereat the alleged delinquent is represented by counsel and where he enjoys the right to remain silent under Maryland Rule 917; whereat the State's Attorney marshals and presents the evidence for the petitioner; and whereat the presiding judge or master makes and announces his finding including "a brief statement of the grounds upon which . . . [he] bases . . . [his] determination."

Conversely, we think it within the equally clear con-

templation of the Maryland law that the "adjudicatory hearing" is not that phase of the proceeding, frequently conducted *ex parte* and frequently conducted *in camera,* whereat the supervising judge ratifies, modifies or rejects the findings and recommendations of the master. Any other reading of the law would render the clear progression of the case from one phase to the next set out by Section 70-17 and Maryland Rule 912d not merely nugatory but self-contradictory. The State's position is that the "adjudicatory hearing" is not completed (and, indeed, not even held) until the magic moment when the judge affixes his seal of approval to the findings and recommendations of the master. Those findings and recommendations, however, go not just to the question of delinquency, but also to the question of disposition. The single act of ratification makes final judgment as to both. If, therefore, in the very instant when the "adjudicatory hearing" is completed, the dispositional phase of the case is also completed, it would, by all traditional reckoning of the fourth dimension, be impossible to proceed from 1) "the conclusion of the adjudicatory hearing" to 2) the "statement of the grounds upon which" he bases his "determination" to 3) "the dispositional hearing" (programmed by Section 70-17 and Maryland Rule 912 to come "after such a determination" and not even required "to be held immediately" nor even required to be within thirty days so long as the adjudged delinquent be not "in detention or shelter care"). The "dispositional hearing" cannot follow "the conclusion of the adjudicatory hearing" if the two stages conclude simultaneously. Events which are contemporaneous cannot be sequential.

The State's conclusion rests upon the infirm premise that the master is not authorized to conduct an "adjudicatory hearing" and that what purports to be a "hearing" is, indeed, only delegated leg work preliminary to and then incorporated into the true "adjudicatory hearing" which occurs as the judge reviews the fact-gathering report of the master. We cannot read any such construction into the law. That the master himself is em-

powered to conduct an "adjudicatory hearing" is, we feel, clear. Maryland Rule 908 e (Masters) provides, in pertinent part:

> "1. Hearing Before Master.
>
> The master shall hear such cases as may be assigned to him by the court and upon the conclusion of the hearing shall announce his findings and recommendations."

Maryland Rule 913 a 1 (Disposition Hearing—Conduct of the Hearing—By Judge or Master) provides:

> "The judge or *master who presided at the adjudicatory hearing* shall, wherever possible, preside at the disposition hearing." (Emphasis supplied)

Maryland Rule 906 b (Duties of Clerk—Time of Hearings) provides:

> "Promptly after the filing of a petition, the clerk designated by the court shall set the time and place of the hearing before the judge *or master*, as the case may be." (Emphasis supplied)

We hold that the "adjudicatory hearing" in this case occurred on January 6, 1971, before Master McDermott. We hold that it concluded with the close of the taking of evidence immediately before the rendering by Master McDermott of his finding of "delinquency." We hold that no waiver hearing (nor even the initial suggestion by the State that there be a waiver hearing) was held, as required by the clear language of Section 70-16, "before the adjudicatory hearing." We hold, therefore, that jurisdiction in this case was erroneously waived by the Juvenile Court.

*Judgment reversed; case remanded to the Division For Juvenile Causes for further proceedings.*