# IN RE APPEAL NO. 287 FROM THE CIRCUIT COURT OF BALTIMORE CITY, SITTING AS A JUVENILE COURT

[No. 287, September Term, 1974.]

*Decided December 18, 1974.*

The cause was argued before ORTH, C. J., and GILBERT and LOWE, JJ.

*Solomon Reddick, Assistant Public Defender,* for appellant.

*Albert Gallatin Warfield, III, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Clarence Long, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

Upon occasion we have had cause to affirm a trial judge for doing "the right thing for a wrong reason." Here we must reverse the judge for doing the right thing at the wrong time.

We have gleaned from a memorandum dated April 4, 1974 in a most sparse record, that appellant was adjudicated delinquent by the Circuit Court of Baltimore City, Division of Juvenile Causes, for having given a false alarm of fire. The memorandum then recites that a requested dispositional hearing was held on the same date which resulted in the master's recommendation that appellant be committed to "Boys' Village." An order was attached to the recommendation to be signed by a judge of the Circuit Court of Baltimore City, Division of Juvenile Causes. Appellant filed exceptions on the same day of the hearing and recommendations by the master, April 4, 1974.

Chronologically, the event next appearing in the record occurred four days later on April 8, 1974, when the "Order of Commitment" pursuant to the recommendations was signed by the Judge. The "Order of Commitment" recited that "it has been *duly adjudged after hearing* before . . . Judge of the Circuit Court of Baltimore City, Division for Juvenile Causes, that [*the juvenile by name*] is a delinquent child and is by reason thereof in need of care and treatment." [Emphasis added]. The juvenile was then committed to the authorities of Boys' Village "to be kept and detained under [their] care and custody . . . ." The *de novo* hearing was not held, however, until May 3, 1974. It is a strange proceeding

indeed [1] where judgment is rendered before the hearing is held.

## The Premature Order

Md. Rule 908 e 2 provides that:

"The petitioner or any party may file written exceptions to the master's findings or recommendations or any part thereof within five (5) days after the hearing."

In the *Matter of Anderson, Epps, Smith and Brady,* 20 Md. App. 31,[2] we vacated an order approving the findings and recommendations of a master which was entered before the time for exceptions had expired. The State attempts to distinguish our holding there by arguing that when appellant filed the exceptions on the first day, the remainder of the five day period had no further "legal significance" for appellant, and the judge should have been permitted to act on the master's findings. While that statement at first appears technically correct the State overlooks the "legal significance" of the filing of exceptions.

Md. Rule 908 e 3 provides:

"If, within the specified time, exceptions are filed, the judge shall hear the *entire matter* or such specific matters as set forth in the exceptions *de novo.*" [Emphasis added].

The meaning given *de novo* by *Black's Law Dictionary* is "Anew; afresh; a second time." Appellant therefore, is not an "adjudicated delinquent" until the *de novo* hearing is held and judgment properly rendered by the court. Notwithstanding the judge's precipitous execution of the

---

1. "No, No!" said the queen. "Sentence first — verdict afterwards." "Stuff and nonsense!" said Alice loudly. "The idea of having the sentence first!"
*Alice's Adventures in Wonderland,* Chap. 12, p. 187.
2. The Court of Appeals granted certiorari on the issues of double jeopardy and State's right to appeal. The case was affirmed, Matter of Anderson, Epps, Smith and Brady, 272 Md. 85.

order pursuant to the master's recommendation, appellant remains an "alleged delinquent" until the requisite hearing is held. While the court in a proper case may *detain* the juvenile, pending his "trial of new" just as he could have been *detained* before the master's hearing, due to appellant's continued status as an "alleged delinquent," that detention may not ordinarily be in a facility to which children who have been adjudicated delinquent are committed. The only exception is when adequate facilities have not been established for such detainees *and* it appears "that public safety and protection reasonably require detention." Courts Art., § 3-823. The record here establishes neither of the conditions necessary for detention of an "alleged" delinquent.

Questionable detention notwithstanding, we repeat for emphasis that appellant was surely entitled to a hearing before the court rendered its decision.

### Failure To Appear

Although the commitment order recited that it was "adjudged after hearing," no hearing was held until May 3, 1974. Appellant did not appear on that date although his counsel did. His absence was explained by the court and affirmed by counsel:

> "THE COURT: Mr. Reddick, I do not see the Respondent present here today, and my understanding of the posture of the case is, and please correct me if I am wrong, is that — and I received — My Bailiff just gave me a memorandum from Mr. John L. Herman of the Probation Department. Memorandum of todays date saying that this Respondent was tried on this charge on April 4, 1974 before Master Rifman. He was found delinquent and committed by the master to Boys Village; that an exception was filed and that the matter was set for hearing before me on todays date, but, that on April the sixth, 1974 the

Respondent escaped from Boys Village and remains as an escapee, whereabouts unknown at this time." [3]

Appellant's argument that he did not waive his right to a trial *de novo* is totally disingenuous. As stated by Mr. Justice Frankfurter dissenting in *Eisler v. United States*, 338 U. S. 189, 192 a court "can entertain a case and decide it only if there is a litigant before it against whom the court may enforce its decision." Appellant's argument that there is no evidence of notice to appellant of the date and place of hearing is belied by his counsel's presence at the hearing. Following the guidance of the Supreme Court of the United State we find it "clearly within [the] discretion [of the hearing judge] to refuse to hear a criminal case in error, unless the convicted party, suing out the writ, is where he can be made to respond to any judgment [the court] may render." *Smith v. United States*, 94 U. S. 97. Although juvenile causes are held in the Circuit Court, and are not a "criminal case in error" the reasoning remains valid. It would be perfectly ridiculous to permit the right to a hearing to remain open until appellant chose to appear, notwithstanding the possibility of lost witnesses, and dimmed recollections during the period of absence.

The order of commitment is vacated; however, the *de novo* hearing has been waived by appellant. Upon remand the court is enjoined peremptorily to confirm, modify or remand the master's findings and recommendations as if no exceptions had been filed within the prescribed period.

> *Order of April 8, 1974 approving the finding and recommendation of the master vacated; case remanded with direction to Juvenile Judge to enter a new order in accordance with this opinion.*

---

**3.** The record does not reflect nor does appellant contest the "authority" by which he was "committed by the Master to Boys Village . . . ." That question is not before us, although we presume the master was authorized by the court to authorize "detention or shelter care" pursuant to Courts Art., § 3-824 and that proper written notice and statement of reasons were given by him for the detention pending commitment by the court.