Andre ALDRIDGE, a minor by Ruth Kent, his mother and next friend

v.

James DEAN, Superintendent, Maryland Training School for Boys.

Donald BRADY

v.

STATE OF MARYLAND.

William L. CAMPBELL, a minor by William Campbell, his father and next friend

v.

James DEAN, Superintendent, Maryland Training School for Boys.

Michael A. EPPS

v.

STATE OF MARYLAND.

Joseph FENWICK, a minor by William Beckett, his stepfather and next friend

v.

Edward J. LANG, Regional Director, Region 8, Department of Juvenile Services for Baltimore City.

James Oliver LOVE, a minor by Joyce Love, his mother and next friend

v.

STATE OF MARYLAND.

George McLEAN, a minor by Minnie Johnson, his mother and next friend

v.

James DEAN, Superintendent, Maryland Training School for Boys.

Quinton R. STEWART, a minor by Haynie Stewart, his father and next friend

v.

James DEAN, Superintendent, Maryland Training School for Boys.

Phillip WITHERSPOON, a minor by Elsie Witherspoon, his mother and next friend

v.

Leonard GMEINER, Superintendent, Montrose School.

Civ. Nos. T–74–1300 to T–74–1308.

United States District Court, D. Maryland.

June 12, 1975.

Peter S. Smith and Michael S. Elder,
Baltimore, Md., and Forrest Foss and

Janet Webb, practicing under Rule 18, Rules Governing Admission to the Bar of Maryland, and appearing with permission of this Court, for petitioners.

Francis B. Burch, Atty. Gen. of Md., and James G. Klair and Bernard A. Raum, Asst. Attys. Gen., Baltimore, Md., for respondents.

M. King Hill, Jr., Baltimore, Md., and John M. McCabe, Chicago, Ill., for National Conference of Uniform State Laws, amicus curiae.

Adrienne E. Volenik, St. Louis, Mo., for National Juvenile Law Center, amicus curiae.

THOMSEN, District Judge.

This opinion deals with nine habeas corpus cases which have been heard together by this court. In each case the petitioner contends that he has been subjected to double jeopardy in the juvenile proceedings in the Division for Juvenile Causes of the Circuit Court of Baltimore City (hereinafter the Juvenile Division), that his constitutional rights have been violated thereby, and that he is entitled to be released from the custody (in five cases confinement,[1] in one case probation,[2] and in three cases potential confinement[3]) to which he has been subjected.

The procedural steps followed by the Juvenile Division are prescribed or authorized by the applicable Maryland statutes[4] or Maryland Rules of Procedure[5] or both, which permit an "adjudicatory hearing" to be held by a master assigned to the Juvenile Division, who hears evidence presented by an Assistant State's Attorney and announces his "finding" that the charge has been sustained or not sustained, i. e., that the child is or is not delinquent. See Rule 908, set out in Finding 4, below. If the master finds that the charge has not been sustained and recommends that the judge sign an order dismissing the case, Rule 908 e 3 provides that the State's Attorney may file, within five days, written exceptions to the master's finding and request a hearing before the judge assigned to the Juvenile Division, and if such exceptions are filed, the judge shall hear the entire matter de novo.[6] Plaintiffs contend that such a de novo hearing before the judge constitutes double jeopardy.

*Findings of Fact*

*The Proceedings in the State Courts in the Nine Cases*

*Finding 1.* In each of the nine cases the office of the State's Attorney for

---

1. Aldridge, Campbell, McLean, Stewart and Witherspoon.

2. Fenwick.

3. Brady, Epps and Love.

4. The statutes in effect before January 1, 1974 (when some of the cases were heard and decided in the Juvenile Division), were codified in the Annotated Code of Maryland, 1957, Vol. 2B, 1973 Replacement Volume, Art. 26, §§ 51–71. Special provisions with respect to Montgomery County are in Art. 26, §§ 72–88.

    The statutes in effect after January 1, 1974 (when some of the cases were decided), are codified in the Annotated Code (1974), Courts and Judicial Proceedings article, §§ 3–801 through 3–842. Citations to sections of the Code will be to this volume unless otherwise indicated.

    By the Acts of 1975, ch. 554, approved May 15, 1975, effective July 1, 1975, §§ 3–

801 through 3–842 were repealed and reenacted with amendments, which will be discussed in the body of this opinion.

5. The applicable rules are contained in Maryland Rules of Procedure, Annotated Code of Maryland, 1957, Vol. 9B, 1971 Replacement Volume, ch. 900, Juvenile Causes, Rules 901 et seq., especially Rule 908, entitled "Conduct of Hearings—Generally". Citations herein to Rules will be to this volume. The subsequent amendments to Ch. 900 of the Rules, which are contained in the 1974 Cum.Supp. to Vol. 9B, are not important in these cases.

6. If the master finds that the charge has been sustained, and no exceptions are filed on behalf of the juvenile, the master holds a disposition hearing, and if he recommends probation, the State's attorney may file exceptions to the recommendation and obtain a de novo hearing before the judge. This happened in one of the nine cases (Stewart).

Baltimore City filed a printed form of petition, which had been filled out to allege that the "named child under the age of eighteen years is Delinquent" for the reason that on or about a certain date and hour the juvenile, in some cases alone and in some cases with others, unlawfully did (a) rob a named person with a deadly weapon, or (b) rob a named person, or (c) assault with intent to murder a named person, or (d) break into a specified house at night with intent to take and carry away property of a stated value, or (e) wilfully destroy specified property of a named person.[7] The reverse side of the petition contains spaces for entries which constitute, in effect, the docket entries in the case.

*Finding 2.* A date for arraignment was then set before one of the seven masters assigned to the Juvenile Division. At the arraignment the juvenile was advised of his rights, including the right to counsel. In each of the nine cases a public defender was appointed to represent the juvenile and entered a denial of the charge. In some of the cases, with the approval of the intake officer, the master determined that the juvenile should be detained at the Maryland Training School for Boys pending the adjudicatory hearing, and the juvenile

was so detained forthwith; in those cases an order was prepared for the signature of the judge assigned to the Juvenile Division, and was usually signed on the same day or a day or two later.

*Finding 3.* Shortly thereafter, the deputy clerk of the Circuit Court who is designated as the chief responsible clerk of the Juvenile Division assigned the case to one of the masters to hold the adjudicatory hearing.[8]

*Finding 4.* Rule 908 (see n. 5, above), in force at the time of all hearings in all nine cases and still in effect, is headed "Conduct of Hearings—Generally". Sub-part e of that rule, headed "Masters", provides:

"1. Hearing Before Master.

"The master shall hear such cases as may be assigned to him by the court and upon the conclusion of the hearing shall announce his findings and recommendations. All papers relating to the case together with the master's findings and recommendations shall then be transmitted to the judge.

"2. Exceptions to Findings or Recommendations.

"The petitioner or any party may file written exceptions to the master's

---

7. In each case the filing of the petition had been authorized by an intake consultant in the Department of Juvenile Services of the State.

8. Rule 912 (see n. 5, above) in force at the time of all adjudicatory hearings in these cases and still in effect, provides:

"*Rule 912. The Adjudicatory Hearing.*

"a. *Scheduling the Hearing.*

"The date for an adjudicatory hearing shall be set promptly after the petition is filed. If the child who is the subject of the petition is in shelter care or detention, the hearing shall be given priority and shall be scheduled for the earliest possible date.

"b. *Preparation and Presentation of Evidence.*

"In a delinquency case, the State's attorney shall prepare and present the testimony in behalf of the petitioner unless excused by the court. In all other cases the appropriate governmental or social agency, the petitioner or other persons authorized by the

court shall prepare and present the evidence in support of the petition.

"c. *Evidence.*

"The rules of evidence applicable to criminal cases shall apply to delinquency hearings. The rules of evidence applicable to civil cases shall apply to all other hearings.

"d. *Findings.*

"1. Determination—Statement of Grounds.

"Upon the conclusion of the adjudicatory hearing, the court shall announce and dictate to the court stenographer or reporter or prepare and file with the clerk a brief statement of the grounds upon which it bases its determination.

"2. Limit on Continued Detention.

"If, after such a determination, the dispositional hearing is not to be held immediately and the child is in detention or shelter care, the court shall determine whether he shall be released or continued in detention or shelter care which shall not be for more than thirty (30) days."

findings or recommendations or any part thereof within five (5) days after the hearing. Exceptions by a petitioner after a delinquency hearing may only be taken by the State's attorney. The clerk designated by the court, upon the filing of such exceptions, shall notify the petitioner and all parties of the time and place of the hearing before the judge.

"3. Order of Judge.

"In the absence of exceptions, the master's findings and recommendations shall promptly be confirmed, modified or remanded by the judge. If, within the specified time, exceptions are filed, the judge shall hear the entire matter or such specific matters as set forth in the exceptions *de novo.*"

*Finding 5.* At the adjudicatory hearing in each of the nine cases the master received evidence and heard argument. No recording of the testimony by a court reporter or on tape was made.[9]

*Finding 6.* At the conclusion of the evidence and argument in each of the nine cases, the master announced his "finding" and his "recommendation" in the presence of the juvenile, his counsel and others.

*Finding 7.* In eight of the nine cases (all except Stewart), the master's finding was "Charge not sustained". Then or shortly thereafter, in each of the eight cases, a clerk entered on the reverse side of the petition, after the printed word "Finding", the words "Charge not sustained", and after the printed word "Order", the word "Dismissed", both entries being made under the date of the hearing before the master.

*Finding 8.* (a) In six of the eight cases covered by Finding 7, the prosecutor stated, immediately after the master

announced his finding and recommendation, that he would file written exceptions thereto. In those cases no report or form of order for the judge's signature was prepared. In each case the State's attorney promptly filed a printed form excepting to the finding of the master and requesting that the matter be reset for hearing before the judge.

(b) In two of the six cases included in (a) above (Brady and Epps), their counsel filed with the clerk of the Juvenile Division motions to dismiss on the ground of double jeopardy. After a hearing in a similar case *(Matter of Anderson),* at which certain facts were stipulated, Judge Hammerman granted the motions to dismiss and filed a full opinion on August 1, 1973, stating the reasons for his decision. The State appealed. Similar motions were granted in other cases not involved in the present habeas corpus proceedings. The State appealed four decisions, including Brady and Epps, and the four appeals were consolidated. The Court of Special Appeals reversed the lower court and remanded all four cases, with directions that the petitions be heard de novo by the judge. *Matter of Anderson,* 20 Md. App. 31, 315 A.2d 540 (1974). The Court of Appeals granted certiorari and affirmed the decision of the Court of Special Appeals. *Matter of Anderson,* 272 Md. 85, 321 A.2d 516 (1974). An appeal to the Supreme Court of the United States by Epps, Brady and Smith was dismissed "for want of substantial federal question". *Epps v. Maryland,* 419 U.S. 809, 95 S.Ct. 21, 42 L.Ed.2d 35 (1974).[10] These rulings and opinions will be discussed below. Brady and Epps are not now in custody, but unless relief is granted by this court, the State intends to proceed with the de novo hearings before the judge.

9. The present statute makes no provision for recording the testimony at an adjudicatory hearing, but Rule 908 a (see n. 5, above) provides that proceedings before a judge be recorded. The new statute, which will take effect July 1, 1975 (see n. 4, above), provides, in § 3–813 (B), that proceedings at a hearing before a master also be recorded.

10. Anderson sought a writ of certiorari, which has been denied. *Anderson v. Maryland,* 421 U.S. 1000, 95 S.Ct. 2399, 44 L.Ed.2d 667 (1975).

(c) In three of the six cases included in (a) above (Aldridge, Campbell and Witherspoon), Judge Hammerman held the de novo hearing after the decision of the Court of Appeals in *Matter of Anderson,* supra. In each case he found the juvenile to be delinquent, and thereafter ordered him to be kept and detained under the care and custody of the Department of Juvenile Services.

(d) In the other case (Love), included in (a), above, the hearing before the judge has been postponed.

(e) In the other two cases covered by Finding 7 (Fenwick and McLean), both of which were heard by a master in the late summer of 1974, after the decision of the Court of Appeals in *Matter of Anderson,* the master in each case announced his "finding" at the conclusion of the hearing as "Charge not sustained". In each of the two cases the master signed a printed form, entitled "Master's Report", which read:

"To the Honorable, the Judge of said Court:

"The following cases were assigned for hearing before me and hearing was held this date. The evidence was not sufficient to sustain the charge. It is recommended that the cases be dismissed."

In each instance the report covered only the one case, and the judge assigned to the Juvenile Division on that day signed his name after the printed words "Approved and So Ordered" at the bottom of the master's report. Nevertheless, after the State's attorney filed exceptions within the five day period provided by Rule 908 e 2, the judge assigned to the Juvenile Division held a de novo hearing in each of the two cases, found the juvenile to be delinquent and, after a disposition hearing, placed Fenwick on probation and committed McLean to the Maryland Training School.[11]

*Finding 9.* In the one case (Stewart) not covered by Finding 7, the charge involved an alleged assault with intent to murder. A master found the juvenile to be delinquent, and on the same day submitted a printed form of "Master's Report" and "Order for Probation". That order was signed by the judge. The next day, the assistant State's attorney who had handled the case filed notice of exceptions and requested that the matter be reset for hearing before the judge "as to disposition only". Such a hearing was held, and at its conclusion the judge detained the juvenile pending an investigation. Following that investigation, a further hearing was held and the juvenile was committed to the Maryland Training School.

### History and Philosophy of Juvenile Court Systems

The history and philosophy of the juvenile court system throughout the country was reviewed in *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966); *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and most recently in *Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). See also Davis, Rights of Juveniles (New York, 1974), and the Prefatory Note to the Uniform Juvenile Court Act, National Conference of Commissioners on Uniform State Laws, 1968. The Maryland history was reviewed in *Matter of Anderson,* 272 Md. at 94–97, 321 A.2d 516.

### The Maryland Decisions

Before the decision in *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), the Court of Appeals of Maryland held that the common law rule against double jeopardy in effect in Maryland did not bar the criminal prosecution of an individual in one

---

11. The practice of having the judge sign an order before the expiration of five days was criticized by the Court of Special Appeals in

Appeal No. 287, 23 Md.App. 718, 329 A.2d 420 (1974), and counsel state that the practice has been abandoned.

of the circuit courts after his adjudication as a delinquent in a juvenile court. *Moquin v. State,* 216 Md. 524, 140 A.2d 914 (1958).[12] In *Matter of Anderson,* see Finding 8(b), supra, the Court of Appeals stated that for the purposes of its decision therein it would "assume, *arguendo,* that a finding that an individual is a delinquent under the terms of the juvenile act then in force, now codified as Code (1974) §§ 3–801 to 3–842 incl., Courts and Judicial Proceedings Article, places him in jeopardy so that a second proceeding relative to the same incident would be barred". 272 Md. at 93, 321 A.2d at 520.

Meanwhile, in *Matter of Brown,* 13 Md.App. 625, 284 A.2d 441 (1971), in which a "waiver hearing" was held after an "adjudicatory hearing" before a master, the Court of Special Appeals held that jurisdiction had been erroneously waived by the Juvenile Court. The appellate court based its decision on the Maryland statutes and rules, without reaching any constitutional question. Judge Moylan, speaking for the Court, analyzed those statutes and rules clearly and at length, 13 Md.App. at 632–634, 284 A.2d 441, and held that the adjudicatory hearing "concluded with the close of the taking of evidence immediately before the rendering by Master McDermott of his finding of 'delinquency' ". 13 Md.App. at 634, 284 A.2d p. 446.

Nevertheless, when *Matter of Anderson* reached the Court of Special Appeals, it stated, 20 Md.App. 31, at 47, 315 A.2d 540, at 549 (1974):

"Even if jeopardy attaches at the beginning of the adjudicatory hearing before a master on a charge of delinquency, as we are assuming for the purpose of decision, there is no adjudication by reason of the master's findings and recommendations. The proceedings before the master and his findings and recommendations are simply the first phase of the hearing which continues with the consideration by the juvenile judge. Whether the juvenile judge, in the absence of exceptions, accepts the master's findings or recommendations, modifies them or remands them, or whether, when exceptions are filed, he hears the matter himself *de novo,* there is merely a continuance of the hearing and the initial jeopardy. In other words, *the hearing,* and the jeopardy thereto attaching, terminate only upon a valid adjudication by the juvenile judge, not upon the findings and recommendations of the master. * * * "

The Court of Appeals granted certiorari and filed a full opinion, which it summarized in the last paragraph, as follows:

"We have seen that Maryland juvenile practice began with those cases being heard before justices of the peace. The office of justice of the peace was described in *Quenstedt v. Wilson,* 173 Md. 11, 18, 194 A. 354 (1937), as 'an ancient and honorable institution.' Prior to the constitutional amendment of 1970, justices of the peace were vested with judicial power under the Constitution. We have seen that juvenile jurisdiction passed to the equity side of the circuit courts in all of the counties of Maryland, other than Montgomery County, and to an equity court in Baltimore City. We have shown that before double jeopardy may arise one must first have been in jeopardy. We have pointed out cases holding that it is not every presentation of evidence of a possible violation of law which places an individual in jeopardy. We have cited cases and

---

12. The majority opinion in *Moquin* stated that "the rule of double jeopardy is applicable only when the first prosecution involves a trial before a criminal court or at least a court empowered to impose punishment by way of fine, imprisonment or otherwise as a deterrent to the commission of crime", and that "[t]he juvenile act does not contemplate the punishment of children when they are found to be delinquent", but "contemplates an attempt to correct and rehabilitate." 216 Md. at 528, 140 A.2d at 916.

authorities to the effect that a master is a ministerial officer, and not a judicial officer. We have called attention to the fact that under the Maryland Constitution a master is entrusted with no part of the judicial power of this State, although the earlier magistrate for juvenile causes was entrusted with such power as a justice of the peace. We have pointed out that, under the Maryland Rules applicable to juvenile cases and under the procedure generally where masters are involved, a master hears evidence and then reports his findings of fact and his recommendations to the chancellor. We have also pointed out that a master's findings do not become binding until approved by a judge of the court to which he reports. Accordingly, we conclude that a hearing before a master is not such a hearing as places a juvenile in jeopardy. Therefore, double jeopardy cannot arise if the matter is heard de novo before the chancellor." *Matter of Anderson,* 272 Md. 85, 105–106, 321 A.2d 516, 527 (1974).

A direct appeal was taken to the Supreme Court by Epps, Brady and Smith, which, as noted above, was "dismissed for want of substantial federal question". *Epps v. Maryland,* 419 U.S. 809, 95 S.Ct. 21, 42 L.Ed.2d 35 (1974). Anderson sought a writ of certiorari, which has been denied. 421 U.S. 1000, 95 S.Ct. 2399, 44 L.Ed.2d 667 (1975).

### Res Judicata and Stare Decisis

The State argues that the action of the Supreme Court in dismissing the appeal of Epps, Brady and Smith "for want of substantial federal question" requires dismissal of the present habeas corpus petitions of Brady and Epps on the ground of res judicata, and dismissal of the seven other petitions on the ground of stare decisis.

There has been disagreement about the precedential effect of a dismissal by the Supreme Court for want of a substantial federal question. It is not necessary for this court to enter that debate, because the Fourth Circuit has indicated that if intervening decisions have drawn into question the continued vitality of the earlier ruling, the plaintiffs are entitled to further consideration. *Hall v. Thornton,* 445 F.2d 834, 835 (1971); *Joseph v. Blair,* 482 F.2d 575, 579–580 (1973). The decision in *Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346, decided May 27, 1975, is such a decision. Although it applied the prohibition against double jeopardy in a somewhat different context, it stated broad principles, particularly with respect to the meaning of jeopardy, which are applicable in this case.

Moreover, the cases consolidated in *Matter of Anderson* were decided by Judge Hammerman on motions to dismiss, with relatively few facts stipulated and no testimony, although the Judge's opinion referred to the actual practice in the Juvenile Division. The opinion of the Court of Appeals of Maryland did not discuss the actual practice. The Supreme Court may well have concluded that such an important question should be decided on a full record, where the parties had an opportunity to produce evidence and to cross-examine witnesses.[13] The record in the present habeas corpus proceedings puts flesh on the bare bones of the statute and rules upon which the Maryland Court relied.

### Exhaustion of State Remedies

Citing 28 U.S.C. § 2254, the State argues that this Court should not consider the habeas corpus petitions filed by those petitioners who have not heretofore sought such relief in the State courts, and should not consider any evidence which was not presented to the State courts in the consolidated cases known as *Matter of Anderson.* Section 2254 does not erect such an insuperable barrier to the invocation of federal habeas corpus. *Wilwording v. Swenson,* 404 U.S. 249, 250, 92 S.Ct. 407, 30 L.

---

13. The recent denial of certiorari to Anderson does not alter this view.

Ed.2d 418 (1971); *Perry v. Blackledge,* 453 F.2d 856 (4 Cir. 1971).

■ The State also argues that the questions of law which the petitioners raise have not been decided by the state courts. The record shows, however, that the questions were presented to the state courts in *Matter of Anderson,* although some of them were not discussed by the Court of Appeals. The decision of that Court was based upon its conclusion that a master is a ministerial officer and not a judicial officer, and that a hearing before a master is not such a hearing as places a juvenile in jeopardy. There is no reason to believe that the Court of Appeals will change its ruling on that point.

This court should not abstain from deciding the six cases where the juveniles have already been subjected to the de novo hearing before Judge Hammerman and either committed to the Training School (in five cases) [14] or placed on probation (one case).[15]

■ The other three plaintiffs [16] have never been brought before the judge for a de novo hearing, and are not in custody or on probation; they may never be brought before the judge; if they are, their motions to dismiss may be granted. As to them, federal habeas corpus is premature.

### The Duty of a Federal Court

A decision of the Court of Appeals of Maryland states authoritatively the principles of Maryland law upon which the decision was based and is binding upon this Court to that extent. However, insofar as these cases involve an interpretation of the Constitution of the United States and the amendments thereto, this court is required to make an independent determination of the scope of the constitutional provision—to interpret the double jeopardy prohibition of the Fifth Amendment, made applicable to the states by the Fourteenth Amendment, *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969)—and determine in the light of *Breed v. Jones* whether that provision has been violated.

In making that determination, this court must consider the substance as well as the form of the proceedings before the Juvenile Division in the cases of the present petitioners.

### *Additional Findings of Fact*
### *The practice in the Juvenile Division of the Circuit Court of Baltimore City*

*Finding 10.* It has been the practice to assign one of the judges of the Supreme Bench of Baltimore City to the Juvenile Division of the Circuit Court year after year.[17] Judge Robert I. H. Hammerman has been so assigned since 1967. When Judge Hammerman is on vacation, another judge from Baltimore City or one of the counties is assigned to the Juvenile Division.[18]

*Finding 11.* Seven masters in chancery are assigned to the Juvenile Division. Code, § 2–501; Rule 908 e (see Finding 4 and n. 4 and n. 5, above).[19] Each has a small staff.

---

14. Aldridge, Campbell, Stewart, McLean and Witherspoon.

15. Fenwick.

16. Brady, Epps and Love.

17. In each of the counties of the State there is a circuit court, which is a trial court of general jurisdiction (law, equity and criminal), with one or more resident judges. In Baltimore City there are six courts, two of which exercise general equity jurisdiction. One of those two is the Circuit Court of Baltimore City. See Code, §§ 1–501, 502, 503. Twenty-one judges are appointed and elected to the Supreme Bench of Baltimore City, and are assigned from time to time to one of the six courts.

18. Judge Douglas H. Moore, Jr., a judge of District 6, Montgomery County, of the District Court of Maryland, was assigned in February 1975, and testified at the hearing in these cases. Judge Moore is ordinarily assigned to the Juvenile Division of District 6. See Code § 1–604. This section is affected by the 1975 statute referred to in n. 4, above.

19. The former statute is Anno.Code of Md. 1957, 1973 Repl.Vol., Art. 26, § 69.

*Finding 12.* The Division handles not only delinquency cases, but also dependency cases, neglect cases, mentally handicapped cases, and cases of children in need of supervision. Code, § 3–804 and Rule 910.

*Finding 13.* In 1974 the Division received over 15,000 petitions in delinquency cases alone, involving over 10,000 juveniles.

*Finding 14.* The hearings in delinquency cases in 1974 included:

|  | Before Judge | Before Masters | Total |
|---|---|---|---|
| Detention Hearings | 73 | 1,913 | 1,986 |
| Waiver Hearings | 124 | 368 | 492 |
| Adjudicatory Hearings | 327 | 5,345 | 5,672 |
| Disposition Hearings | 254 | 3,627 | 3,881 |
|  | 778 | 11,253 | 12,031 |

The figures for hearings before the judge include cases which had been heard originally by a master, in which the master's finding or proposed disposition had been excepted to by the State's attorney or by the public defender or other representative of the juvenile, as permitted by Rule 908 e, set out in Finding 4, above.

*Finding 15.* The hearings set out in Finding 13 resulted in 6,465 orders signed by the judge during the year.[20] Other orders in delinquency matters[21] amounted to 3,377, a grand total of 9,842 orders signed by the judge in 1974 in delinquency matters alone. The judge also signed 1,481 orders resulting from nondelinquency hearings held by the masters.

*Finding 16.* The principal deputy clerk of the Juvenile Division assigns cases for hearings either to the judge or to one of the masters. The clerk makes an effort to assign to the judge for original hearings cases involving the most serious acts of violence, but the volume of such cases has become so great that many of the more serious cases are assigned to a master.

*Finding 17.* There is little difference in the conduct of an adjudicatory hearing before a master and the conduct of such a hearing before the judge, except that the proceedings before the judge are recorded by a court reporter.[22] They will be recorded after the new statute, see n. 4, takes effect on July 1, 1975.

*Finding 18.* In hearings before a master the witnesses are sworn, as they are before the judge. The State's attorney calls witnesses and introduces other evidence, and the attorney for the juvenile (usually a public defender) may do the same.

*Finding 19.* At the conclusion of an adjudicatory hearing the master regularly announces his "finding"—not a "proposed finding".[23]

*Finding 20.* If the master finds the juvenile not delinquent, the State's attorney may immediately, or at any time within five days, file an exception and obtain a de novo hearing, at which the State may present a stronger case.

*Finding 21.* Unless the State's attorney indicates immediately that he will file an exception, the master includes the case in a printed report stating his *finding* "that the evidence was not sufficient to sustain the charge" and his *recommendation* that the case be dismissed. The judge usually signs his name after the printed words "Approved and So Ordered".[24]

---

20. After some adjudicatory hearings no order was presented to the judge until after the disposition hearing.

21. Dismissals from probation, termination of after-care supervision and rescission of commitments to institutions.

22. Since the hearings before a master are not recorded in any way, the masters usually take notes, often sketchy. These notes are kept in the master's office, and are neither made a part of the court file nor sent to the judge with the master's proposed order.

23. The witnesses were unanimous on this point. Indeed, Rule 908 e 1 requires the master to announce his "findings" and "recommendations".

24. As noted in Finding 8(e), the judge formerly signed such orders promptly, before the five days within which the State's attorney might file exceptions had expired. Never-

*Finding 22.* If the master finds the juvenile to be delinquent, he may proceed at once to hold a disposition hearing. The juvenile, or someone on his behalf, may file an exception immediately, or within five days after the master announces his finding, or may wait until after the master announces the disposition he will recommend.

*Finding 23.* In Baltimore City only about one-quarter to one-third of the proposed orders submitted by the masters are accompanied by any memorandum. Such memoranda usually run about a page and a half.

*Finding 24.* The evidence shows and the State does not deny that, on the average, the judge devotes a little less than one minute to each proposed order. This court intimates no criticism of the judge. He spends very long days on the bench and in his chambers. He himself presides at many hearings in delinquency cases (778 in 1974), including many of the most serious cases; he hears all cases against adults charged with contributing to the delinquency of a minor, and some other matters. He signs many orders of various kinds. He is responsible for the coordination of the juvenile court system in Baltimore City. This involves, in addition to the usual duties of a judge, conferences with representatives of the Division of Juvenile Services of the State, the Police Department, and all juvenile support services in the City, including medical personnel.

*Finding 25.* Unless an exception has been filed by one side or the other, the judge seldom modifies the master's proposed order—"maybe four to nine times a year", Judge Hammerman testified—and then usually because a probation officer, a teacher or someone else speaks to the judge.

*Finding 26.* If a master finds a juvenile to be delinquent and recommends commitment, the juvenile is ordinarily taken into custody immediately, without waiting for the judge to sign an order of commitment.

*Finding 27.* If a juvenile has been detained pending his adjudicatory hearing, and the master finds that the charge was not sustained, the juvenile is released without waiting for the judge to sign an order unless the State's attorney indicates immediately that he will file an exception. Even though the master finds that the charge has been sustained, if he does not believe that the juvenile should be detained pending the disposition hearing, the master often directs that the child be released forthwith.

*Finding 28.* The juvenile and his family regard, and are justified in regarding, the hearing before the master as a trial. They are supported in this view by the fact that the master not only announces his finding as to whether or not the charge has been sustained, but often either causes the child to be forthwith released from existing custody or taken into custody, without waiting for an order to be signed by the judge.

### Discussion and Conclusions

The Supreme Court stated in *Winship*, 397 U.S. 358, 359, 90 S.Ct. 1068, 1069, 25 L.Ed.2d 368:

> "Constitutional questions decided by this Court concerning the juvenile process have centered on the adjudicatory stage at 'which a determination is made as to whether a juvenile is a "delinquent" as a result of alleged misconduct on his part, with the consequence that he may be committed to a state institution.' *In re Gault*, 387 U.S. 1, 13 [87 S.Ct. 1428, 1436, 18 L. Ed.2d 527] (1967). *Gault* decided that, although the Fourteenth Amendment does not require that the hearing at this stage conform with all the requirements of a criminal trial or even of the usual administrative proceeding, the Due Process Clause does

theless, if the State's attorney filed timely exceptions, the judge would hold a de novo hearing, as was done in the cases of Fen-

wick and McLean. This practice has been abandoned. See n. 11, above.

require application during the adjudicatory hearing of ' "the essentials of due process and fair treatment." ' *Id.,* at 30. * * * "

In *Breed v. Jones,* 421 U.S. 519, 95 S. Ct. 1779, 44 L.Ed.2d 346 (1975), the Court said:

"We believe it is simply too late in the day to conclude, as did the District Court in this case, that a juvenile is not put in jeopardy at a proceeding whose object is to determine whether he has committed acts that violate a criminal law and whose potential consequences include both the stigma inherent in such a determination and the deprivation of liberty for many years." 421 U.S. at 529, 95 S. Ct. at 1785.

Again,

" * * * in terms of potential consequences, there is little to distinguish an adjudicatory hearing such as was held in this case from a traditional criminal prosecution. For that reason, it engenders elements of 'anxiety and insecurity' in a juvenile, and imposes a 'heavy personal strain.' " 421 U.S. at 530, 95 S.Ct. at 1786.

"We deal here, not with 'the formalities of the criminal adjudicative process, *McKeiver v. Pennsylvania,* 403 U.S. [528], at 551, [91 S.Ct. 1976, at 1989, 29 L.Ed.2d 647] but with an analysis of an aspect of the juvenile court system in terms of the kind of risk to which jeopardy refers." 421 U.S. at 531, 95 S.Ct. at 1786.

"Jeopardy attached when respondent was 'put to trial before the trier of the facts,' *ibid.,* that is, when the Juvenile Court, as the trier of the facts, began to hear evidence." 421 U.S. at 531, 95 S.Ct. at 1787.

Even accepting the premise that the juvenile never faced the risk of more than one punishment, the Court noted

that it had pointed out that "the Double Jeopardy Clause . . . is written in terms of potential or risk of *trial* and conviction, not punishment". 421 U.S. at 532, 95 S.Ct. at 1787.

" * * * the fact that the proceedings against respondent had not 'run their full course,' . . . within the contemplation of the [State Juvenile Code] . . . does not satisfactorily explain why respondent should be deprived of the constitutional protection against a second trial." 421 U.S. at 534, 95 S.Ct. at 1788.

The opinion of the Court of Appeals of Maryland in *Matter of Anderson* holds that jeopardy does not attach at a hearing before a master. The difficulties with that conclusion are apparent.[25] But assuming that it is the law of Maryland, this court cannot accept that conclusion as binding when it is applying federal constitutional principles. The decisions of the Supreme Court and the Fourth Circuit require that this court be guided by substance rather than form.

■ *Conclusion 1.* A juvenile is placed in jeopardy when the State begins to offer evidence in an adjudicatory hearing before a master.

■ *Conclusion 2.* Whether the controlling principle be double jeopardy or fundamental fairness, the rights of a juvenile under the Fourteenth Amendment are violated in a case where (in the absence of a valid consent or waiver by or on behalf of the juvenile) after a master has held an adjudicatory hearing and has announced his finding "charge not sustained", the state is allowed to file exceptions to the finding of the master and to obtain a de novo adjudicatory hearing before a judge on the question whether the juvenile is delinquent by reason of the alleged act.

**25.** If this be the law of Maryland, when is a juvenile placed in jeopardy in the ordinary case, where the only hearing is before the master and the judge reads a printed form of report, see Finding 21, above, without any factual details, and signs his name below the words "Approved and So Ordered"?

■ *Conclusion 3.* In the six habeas corpus cases covered by Findings 8(c), 8(e) and 9 (Aldridge, Campbell, Witherspoon, Fenwick, McLean and Stewart), the rights of the juvenile under the Fourteenth Amendment were violated when, after the master had announced his finding, the State filed exceptions thereto and the juvenile was for the second time "put to the task of marshaling his resources against those of the State" and thereby "twice subjected to the 'heavy personal strain' which such an experience represents. *United States* v. *Jorn,* 400 U.S. [470] at 479 [91 S.Ct. 547, 27 L.Ed.2d 543]." *Breed v. Jones,* 421 U.S. 519, at 533, 95 S.Ct. at 1787.[26]

*

The court intimates no opinion as to whether the problem involved in the cases now before the court can be avoided by some such provision or practice as is embodied in section 7(b) of the Uniform Juvenile Court Act drafted by the National Conference of Commissioners on Uniform State Laws and approved by the American Bar Association on August 7, 1968.[27]

Aside from the question involved in the provision for a de novo hearing when the State's attorney files an exception to the master's finding, the evidence indicates that the practice under the Maryland statute and rules can be made to work satisfactorily, if the cases are adequately prepared and presented by the State's attorney, if a record of the proceedings at all adjudicatory hearings is made,[28] if an adequate report is prepared by the master in each case, if an adequate number of judges (whether one or more than one) is available to review the master's reports and recommendations, and the judge devotes the necessary time to such review and consults with the master when he sees a problem or has any doubt as to the proper order. This is shown by the practice in Howard County, as testified to by Judge James Macgill, the Chief Judge and Administrative Judge of the Fifth Judicial Circuit.[29]

*

The court will enter an appropriate order in the cases of Aldridge, Campbell, McLean, Stewart and Witherspoon directing that they be released from any detention resulting from the orders referred to in Findings 8(c), (e) and 9, and in the case of Fenwick that he be discharged from the probation resulting from the order referred to in Finding 8(e).

The court will enter an order in the cases of Brady, Epps and Love dismissing their petitions without prejudice.

---

26. In the case of Stewart, although the State's exceptions went only to the question of disposition, the judge took additional evidence, over the objection of Stewart's attorney, with respect to the circumstances of the offense.

27. Section 7(b) reads as follows: "The judge may direct the hearings in any case or class of cases be conducted in the first instance by the referee in the manner provided by this Act. Before commencing the hearing the referee shall inform the parties who had appeared that they are entitled to have the matter heard by the judge. If a party objects the hearing shall be conducted by the judge."

The Comment to Section 7 of the Uniform Act reads as follows:

"Provisions for referees are fairly common. They serve a purpose where a case load is greater than the judge can effectively handle, but not sufficiently great to warrant the appointment of an additional judge. In such situations, the use of referees is warranted to relieve the judge of these routine and simple matters which do not call for the qualifications of a judge.

"But referees should not be resorted to as a substitute for additional judges when these are needed. * * *"

28. As is provided for in the 1975 statute.

29. Only two exceptions have ever been taken by the State in Howard County to the master's findings or recommendations.