[S.F. No. 23580. Mar. 31, 1978.]

JESSE W., a Minor, Petitioner, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

894

COUNSEL

David R. Packard and Robert L. Walker for Petitioner.

James H. Barnes as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Ronald E. Niver, Deputy Attorneys General, for Real Party in Interest.

## OPINION

**CLARK, J.**—Jesse W., a minor, seeks writ of prohibition to restrain the respondent juvenile court from proceeding pursuant to statute (Welf. & Inst. Code, former § 559, now § 253) to redetermine petitioner's status as a ward after a referee had absolved petitioner of misconduct charged in a petition filed pursuant to Welfare and Institutions Code section 602. Welfare and Institutions Code section 602 provides: "Any person who is under the age of 18 years when he violates any law of this state . . . defining crime . . . is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court." All section references hereinafter are to the Welfare and Institutions Code unless otherwise specified.

Petitioner contends that the statutory procedure for redetermination of his status constitutes a second exposure to jeopardy for the same offense, contrary to Fifth Amendment prohibitions. We agree and order the writ to issue.

Petitioner was charged pursuant to section 602 with having committed in December 1975 a battery as defined by Penal Code section 242. At a hearing before a juvenile court referee to determine the truth of such allegations, both the People and petitioner called witnesses who were examined and cross-examined. After brief argument the referee dismissed the charges on the ground that he entertained a reasonable doubt whether petitioner had committed the charged offense.

In April 1976, following the referee's order dismissing the petition, a juvenile court judge, acting pursuant to sections 559 and 560,[1] ordered a de novo rehearing of the allegations of petitioner's misconduct. Petitioner moved to dismiss the charges on the ground that he had been once in jeopardy and, after the motion was denied, sought the instant relief. Proceedings in the juvenile court have been stayed pending the result of this proceeding.

In support of his claim that a de novo rehearing before a juvenile court judge would expose him a second time to jeopardy, petitioner relies particularly on *Breed* v. *Jones* (1975) 421 U.S. 519 [44 L.Ed.2d 346, 95 S.Ct. 1775]. Pursuant to provisions of our Juvenile Court Law at issue in that case, a minor who had been found by a juvenile court to have committed alleged acts of misconduct and thus to have come within the jurisdiction of that court, could nevertheless be tried on criminal charges arising out of the same misconduct. The minor in *Breed* was criminally convicted after the juvenile court had adjudged him to be a ward who was unfit for treatment within the facilities of that court. (See *Bryan* v. *Superior Court* (1972) 7 Cal.3d 575 [102 Cal.Rptr. 831, 498 P.2d 1079].) The Supreme Court held that jeopardy first attached at the adjudicatory or jurisdictional hearing in the juvenile court, remarking that "it is simply too late in the day to conclude . . . that a juvenile is not put in jeopardy at a proceeding whose object is to determine whether he has committed acts that violate a criminal law and whose potential consequences include both the stigma inherent in such a determination and the deprivation of liberty for many years." (*Breed* v. *Jones, supra,* 421 U.S. 519, 529, fn. omitted [44 L.Ed.2d 346, 355].) The court next held that the jeopardy to which the juvenile was exposed in criminal court proceedings was a new and different jeopardy. and that the criminal conviction was thus obtained contrary to the constitutional prohibition.

██ It is thus established that double jeopardy prohibitions apply in juvenile proceedings. (See also *Richard M.* v. *Superior Court* (1971) 4 Cal.3d 370 [93 Cal.Rptr. 752, 482 P.2d 664].) ██ Jeopardy attached in petitioner's case when the jurisdictional hearing was "entered upon." (*Id.,* at p. 376.) A conclusion that jeopardy has attached, however,

---

[1]At the time here pertinent, section 559 provided: "A judge of the juvenile court may, on his own motion, order a rehearing of any matter heard before a referee." Section 559 has been repealed (Stats. 1976, ch. 1068, § 17), and section 253 now provides for a rehearing on the court's own motion.

At the time here pertinent section 560 (repealed, Stats. 1976, ch. 1068, § 17) provided: "All rehearings of matters heard before a referee shall be before a judge of the juvenile court and shall be conducted de novo." (See, currently, § 254.)

" 'begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial.' " (*Serfass* v. *United States* (1975) 420 U.S. 377, 390 [43 L.Ed.2d 265, 275, 95 S.Ct. 1055].) The dispute in this case concerns the proper characterization of juvenile court proceedings had after the point in time at which jeopardy first attached. We accordingly proceed to examine the nature of such proceedings.

We had occasion to examine a juvenile court referee's function and authority in *In re Edgar M.* (1975) 14 Cal.3d 727 [122 Cal.Rptr. 574, 537 P.2d 406]. We held that a referee is constitutionally limited to the performance of only "subordinate judicial duties" (see Cal. Const., art. VI, § 22) and noted that "referee's determinations . . . are not binding until adopted by the court itself." (*Id.,* at p. 734.) Although a referee may be assigned by a presiding juvenile court judge to hear and determine issues (former § 554, now § 248), such determinations are subject to procedures for review by a judge. "It is clear that without the availability of any review procedures the contested adjudication and disposition of a minor as a ward of the juvenile court by a referee acting without the parties' consent would violate the constitutional limitation upon his functions to 'subordinate judicial duties' (art. VI, § 22)." (*Id.,* at p. 735.)

In view of the foregoing it is manifest we have limited a referee's subordinate judicial duties in such a way that, unless a minor waives his right to judicial redeterminations, a referee's findings and orders are advisory only.[2] A referee's findings or orders may appear to have the effect of a judicial determination when a minor's application for rehearing is denied by the juvenile court. But this is so only because the court, exercising an independent judgment, approves the referee's advisory determinations. (See former § 558, now § 252.) We stated in *Edgar M.* that "[A] judge's decision to deny the application and hence adopt the referee's determinations as those of the court is based on data amply sufficient for forming a judgment independent from that of the referee. Under these circumstances the referee's initial findings and orders become only advisory and their rendition constitutes no more than a subordinate judicial duty." (*In re Edgar M., supra,* 14 Cal.3d 727, 735-736.)

---

[2] We consider here only those instances in which the parties have not stipulated that a referee may make judicial determinations when otherwise qualified to do so. (See Cal. Const., art. VI, § 21; *In re Edgar M., supra,* 14 Cal.3d 727, 732.) When a minor as a party litigant has so stipulated, a referee's determinations would then be accorded full judicial effect.

The People contend that because a referee's function is merely to advise and assist the juvenile court in making judicial determinations affecting a minor, it cannot be said that a minor's exposure to jeopardy in proceedings before the referee constitutes an exposure separate and apart from that occurring when the juvenile court finally adjudicates the matter within the meaning of *Breed* v. *Jones, supra,* 421 U.S. 519. This contention has merit when in fact the juvenile court acts in review of advisory determinations made by a referee. In such instance there is but one continuing proceeding leading to but a single adjudication. But this is not the instant case. Here the juvenile court does not purport to act in review of a recommended determination. It has ordered a de novo *rehearing* pursuant to sections 559 and 560. A rehearing de novo "is in no sense a review of the hearing previously held, but is a complete trial of the controversy, the same as if no previous hearing had ever been held." (*Collier & Wallis, Ltd.* v. *Astor* (1937) 9 Cal.2d 202, 205 [70 P.2d 171].) The question thus becomes whether there is a second exposure to jeopardy *after* an initial exposure in proceedings before the referee, the referee's determinations are abandoned rather than reviewed, and another, independent proceeding is commenced before a juvenile court judge.

The Supreme Court emphasizes in *Breed* that the constitutional prohibition against a second exposure to jeopardy is a prohibition against multiple trials—not the threat of multiple punishment.[3] In that case a juvenile prosecution was deemed to be the equivalent of a criminal prosecution within the meaning of "jeopardy" and, after the juvenile proceedings had been prosecuted to a conclusion, there was a criminal prosecution for the same offense. Here juvenile proceedings before a referee have been prosecuted to a conclusion and petitioner is threatened with a second prosecution for the same offense. Although the threatened prosecution is for a juvenile adjudication—not a criminal proceeding—"there is little to distinguish an adjudicatory hearing . . . from a traditional criminal prosecution." (*Breed* v. *Jones, supra,* 421 U.S. 519, 530 [44 L.Ed.2d 346, 356].) Moreover, we held a second exposure to jeopardy to exist when, after allegations of a first petition were found to be not true, a juvenile is charged with the same offense in a second

[3]The statutory proceedings in the circumstances of the instant case do not pose a threat that a juvenile will be punished twice—once as the result of a referee's determination and again as the result of a juvenile court determination. The lack of such a threat, however, does not answer the constitutional claim. The court in *Breed* stated it has "pointed out that 'the Double Jeopardy Clause . . . is written in terms of potential risk of trial and conviction, not punishment.' (*Price* v. *Georgia,* 398 U.S., at 329. . . .)" (*Breed* v. *Jones, supra,* 421 U.S. 519, 532 [44 L.Ed.2d 346, 357].)

petition. (*Richard M.* v. *Superior Court, supra,* 4 Cal.3d 370; see also *In re James M.* (1973) 9 Cal.3d 517, 520 [108 Cal.Rptr. 89, 510 P.2d 33].)

We can distinguish *Richard M.* and *James M.* only on the ground that the first exposure to jeopardy in those cases occurred in hearings before a juvenile court judge, rather than before a referee as in the instant case. But because jeopardy attaches when proceedings are entered upon before either a juvenile court judge or a referee, the distinction is one which must be deemed to be without meaning. In both instances the juvenile is exposed to jeopardy when the hearing is entered upon. If that hearing is terminated and the juvenile is subjected again to a de novo hearing—not a review of the first hearing and determinations therein—he would necessarily be exposed to jeopardy a second time within the meaning of *Breed* v. *Jones, supra,* 421 U.S. 519.[4] (See *Aldridge* v. *Dean* (D.Md. 1975) 395 F.Supp. 1161 [holding procedures under Maryland's juvenile court law, substantively similar to pertinent provisions of our law, to expose a juvenile to a second jeopardy].)

We conclude petitioner would be exposed to jeopardy a second time contrary to Fifth Amendment prohibitions if subjected to a redetermination of his status as a ward of the juvenile court in the circumstances of this case.

██ Let a peremptory writ of prohibition issue as prayed for.[5]

Mosk, J., Richardson, J., and Manuel, J., concurred.

**THOMPSON (Homer B.), J.***—I concur in the decision rendered, and respectfully conclude that its effect upon the juvenile court system warrants additional elaboration.

---

[4]The constitutional prohibition against a second exposure to jeopardy is operative because of the prior *exposure*. Although the allegations of the petition were found to be not true in the prior proceedings before the referee, such a finding is not a condition to the right to invoke the constitutional prohibition.

[5]Because a referee's determination favorable to a juvenile cannot be reheard, it is not merely a subordinate judicial act and is constitutionally proscribed. (See *In re Edgar M., supra,* 14 Cal.3d 727.) While neither that constitutional proscription nor jeopardy limitations would foreclose referee jurisdictional recommendations adverse to a juvenile and subject to petition for rehearing by the juvenile, it is nevertheless apparent a referee's usefulness in hearing the jurisdictional issue will be severely limited. We do not purport to define those limits. However, juvenile court referees may continue to hear and to make advisory recommendations as to detention, fitness, dispositional and perhaps other matters without offending constitutional limitations.

*Assigned by the Chairperson of the Judicial Council.

We are confronted with a single question: Whether a rehearing, granted by a juvenile court judge on the judge's own motion, of a determination by a referee that a juvenile had not committed the criminal offense charged in a petition, constituted a violation of the constitutional prohibition against double jeopardy.

I agree that the constitutional prohibition against double jeopardy is here violated; a determination which I find consistent with considerations of basic fairness.

This conclusion is reached with reluctance. Our decision will have a substantial impact upon the juvenile court system. Recently this court went to considerable length to preserve referee adjudication against a different kind of constitutional attack. (*In re Edgar M.* (1975) 14 Cal.3d 727 [122 Cal.Rptr. 574, 537 P.2d 406].) By authority of that case (*id.,* at p. 734), juvenile referees are constitutionally limited to the performance of only "subordinate judicial duties." (Cal. Const., art. VI, § 22.) Since referee jurisdictional determinations are hereunder held no longer subject to rehearing, under the double jeopardy prohibition, such referee decisions become final adjudications and their rendition fails to meet the test of "subordinate judicial duties" laid down as a constitutional requirement in *Edgar M.* They become determinative; hence invalid under *Edgar M.* Thus, the effect of this decision is to hereafter prohibit referee jurisdictional hearings.

In the case at bar we are dealing with what is termed a referee jurisdictional or adjudicative hearing; in familiar language, a trial, hence the double jeopardy issue. The effect of this holding upon non-jurisdictional referee determinations (for example, detention hearings, fitness hearings, and annual reviews) is left to subsequent determination by this court.

Returning to the question presented, let us: (1) examine the nature and scope of double jeopardy protection; (2) consider its application to the juvenile court system; and (3) review other considerations of basic fairness.

### DOUBLE JEOPARDY PROTECTION

Blackstone recorded: ". . . no man is to be brought into jeopardy of his life more than once for the same offence." (4 Blackstone's Commentaries 335.) Early on, the Supreme Court observed that the ". . . common law not only prohibited a second punishment for the same offence, but it went further and forbid a second trial for the same offence, whether the accused had suffered punishment or not, and whether in the former trial he had been acquitted or convicted." (*Ex parte Lange* (1874) 85 U.S. (18

Wall.) 163, 169 [21 L.Ed. 872, 876]; and see *U.S.* v. *Ball* (1896) 163 U.S. 662, 669 [41 L.Ed. 300, 302, 16 S.Ct. 1192]; *Kepner* v. *United States* (1904) 195 U.S. 100, 130 [49 L.Ed. 114, 124-125, 24 S.Ct. 797]; *Price* v. *Georgia* (1970) 398 U.S. 323, 326 [26 L.Ed.2d 300, 303-304, 90 S.Ct. 1757].)

The basic rationale, one firmly embedded in our jurisprudence, is that the state with all of its power and resources should not be permitted to make repeated attempts to convict a person for an alleged offense, thereby "... subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity." (*Green* v. *United States* (1957) 355 U.S. 184, 187 [2 L.Ed.2d 199, 204, 78 S.Ct. 221, 61 A.L.R.2d 1119]; see also, 1 Wharton, Criminal Law and Procedure § 136, pp. 299, 301.)

Double jeopardy is expressly prohibited by the federal Constitution and the California Constitution. (U.S. Const., 5th Amend.; Cal. Const., art. I, § 15.) The double jeopardy provision of the Fifth Amendment applies to the states through the Fourteenth Amendment. (*Benton* v. *Maryland* (1969) 395 U.S. 784 [23 L.Ed.2d 707, 89 S.Ct. 2056]; see also, *Simpson* v. *Florida* (1971) 403 U.S. 384 [29 L.Ed.2d 549, 91 S.Ct. 1801].)

### Applied To The Juvenile Court

In *Richard M.* v. *Superior Court* (1971) 4 Cal.3d 370, at page 375 [93 Cal.Rptr. 752, 482 P.2d 664], this court, by unanimous decision, held that in proceedings before the juvenile court "... juveniles are entitled to constitutional protections against twice being placed in jeopardy for the same offense." There the allegations of a petition were found not true and the petition dismissed, only to be followed by the filing of a new petition for the same offense, a procedure held violative of the constitutional prohibition. (See also, *In re James M.* (1973) 9 Cal.3d 517, 520 [108 Cal.Rptr. 89, 510 P.2d 33].)

Juvenile jurisdictional hearings are nonjury trials. In nonjury trials jeopardy attaches upon the swearing of the first witness. (*Richard M.* v. *Superior Court, supra,* 4 Cal.3d 370, 376; *People* v. *Sturdy* (1965) 235 Cal.App.2d 306, 314 [45 Cal.Rptr. 203]; see also, *Breed* v. *Jones* (1975) 421 U.S. 519, 531 [44 L.Ed.2d 346, 356, 95 S.Ct. 1775].)

Since this constitutional protection applies to juvenile court proceedings, and since jeopardy attached upon commencement of the referee hearing, resolution of the question presented depends upon whether the rehearing granted by the judge constituted a new or second jeopardy. Petitioner asserts that under the authority of the *Breed* case, a rehearing

would expose petitioner to double jeopardy. (*Id.*) *Breed* involved two trials for the same offense, hence double jeopardy. (See also, *Aldridge* v. *Dean* (D.Md. 1975) 395 F.Supp. 1161.)

Certainly procedurally, the case before us also involves two separate and distinct trials, one before the referee, the second before a judge. To illustrate, if one were to observe a referee trial in progress, then subsequently observe a judge trial in progress, it would be difficult to tell them apart. Barring individual idiosyncrasies of the hearing officers, both trials are commenced and conducted according to identical procedures.

The Juvenile Court Law provides: "A referee shall hear such cases as are assigned to him by the presiding judge of the juvenile court, with the same powers as a judge of the juvenile court." (Welf. & Inst. Code, former § 554, now § 248.) The new juvenile court rules adopted by the Judicial Council, effective July 1, 1977, make special provision, as to referees, regarding the use of court reporters and advising participants that referee orders may be reheard by a judge. (Cal. Rules of Court, rule 1317.) However, in all other respects the rule provides ". . . proceedings heard by a referee shall be conducted in the same manner as juvenile court proceedings heard by a judge." (*Id.*) Although certain dispositional orders by a referee require express approval by a judge, the referee has available the same range of dispositional orders as are available to a judge. (*Id.,* rule 1318.) It is interesting to note that the adjudicative hearing in juvenile court in the *Breed* case was actually conducted by a referee rather than a judge.

In the instant case, the referee commenced the jurisdictional hearing, both the People and the juvenile called witnesses who were examined and cross-examined, and after argument the petition was dismissed. As in *Breed,* the referee hearing was, in a true sense, a trial.

Let us next consider the nature of the rehearing ordered by the judge in the case before us. Is such a rehearing a trial? The Juvenile Court Law provides: "All rehearings of matters heard before a referee shall be before a judge of the juvenile court and shall be conducted de novo." (Welf. & Inst. Code, former § 560, now § 254; Cal. Rules of Court, rule 1319(e).) What is a hearing "de novo"? As this court has observed, it ". . . literally means a new hearing, or a hearing the second time. [Citation omitted.] Such a hearing contemplates an entire trial of the controversial matter in the same manner in which the same was originally heard. *It is in no sense a review of the hearing previously held, but is a complete trial of*

*the controversy,* the same as if no previous hearing had ever been held." (Italics added, *Collier & Wallis, Ltd.* v. *Astor* (1937) 9 Cal.2d 202, 205 [70 P.2d 171]; *Buchwald* v. *Katz* (1972) 8 Cal.3d 493, 502 [105 Cal.Rptr. 368, 503 P.2d 1376].)

Thus, a rehearing in the juvenile court is a retrial, a second trial. It is therefore clear that the case before this court, as was true in *Breed,* consists of two separate, distinct trials for the same offense, elements classically associated with double jeopardy.

Let us next examine the attempt by the People to distinguish *Breed.* First the People describe the proceedings in the instant case as differing from *Breed* in that here they were "ongoing"; the referee making findings and orders "preliminary in nature," "advisory determinations," which are subject to "independent judicial resolution."

Are these assertions borne out by the facts presented in the case before us? Certainly the juvenile proceedings in this case were not "ongoing." The referee dismissed the petition. There is no provision in the statute or rules of court for application for rehearing by the people. (Welf. & Inst. Code, formerly §§ 553-560, now §§ 247-254; Cal. Rules of Court, rules 1316-1319.) When, as in this case, a referee dismisses a petition, that concludes the matter. Neither the statute nor rules provide for any type of review. If such adjudicative determination is ever reviewed by a juvenile court judge, such review is a matter of purely local and discretionary practice. The fact that the judge in this case ordered a rehearing on his own motion (Welf. & Inst. Code, former § 559, now § 253; Cal. Rules of Court, rule 1319(d)) was due to circumstances peculiar to this case and no part of a regular or "ongoing" procedure for review. In fact, the letter from the district attorney to the judge precipitating the order for rehearing in this case was action which has been criticized by this court and conduct which we have stated to be of "doubtful constitutionality." (*Donald L.* v. *Superior Court* (1972) 7 Cal.3d 592, 598-599 [102 Cal.Rptr. 850, 498 P.2d 1098].)

It is also evident from the facts that the referee's determination was not "preliminary in nature" or "advisory." Rather, it was determinative of the first trial. The fact that the rehearing by the judge is a hearing "de novo" (i.e., a new trial and not a review), as demonstrated in the earlier discussion, contradicts the assertion that the referee's order was "preliminary" or "advisory." Had rehearing not been granted, the matter would have stood concluded. It is true that the judge does, upon

conducting a hearing "de novo," make an "independent judicial resolution" of the matter. However, that follows from the fact that the rehearing by the judge is a second and separate trial.

Secondly, the People describe the proceedings in the instant case as differing from *Breed* in that the transition from a referee to a judge in the juvenile court does not impose the same "harsh" burden as that imposed in a transfer from juvenile to criminal court. In this regard, it should be noted that a trial in criminal court has its compensations. It carries the right to trial by jury and the right to bail in most cases. Furthermore, a trial is a trial—the constitutional doctrine of double jeopardy does not distinguish between juvenile and criminal trials. To a juvenile *acquitted* by a referee, a second exposure to jeopardy before a judge of the juvenile court may seem every bit as onerous as a trial in criminal court after a *conviction* in juvenile court before a referee.

The People, by repeated referrals to "on-going" juvenile proceedings and single jeopardy, seem to be relying upon a "continuing jeopardy" or "run their full course" concept. However, these arguments were advanced and rejected in *Breed. (Id.,* at p. 534 [44 L.Ed.2d at p. 358]; see also, *United States* v. *Jenkins* (1975) 420 U.S. 358, 369 [43 L.Ed.2d 250, 258-259, 95 S.Ct. 1006].)

Lastly, it should be noted that *In re Edgar M.* (1975) 14 Cal.3d 727 [122 Cal.Rptr. 574, 537 P.2d 406], and the instant case involve separate and distinct constitutional provisions. Resolving the double jeopardy issue by prohibiting a rehearing "de novo" merely shifts the constitutional violation to the *Edgar M.* limitation. Thus, in the case before us the referee conducted an adjudicative hearing, found for the juvenile, and dismissed the petition. Whether such action meets the *Edgar M.* test depends upon whether such action was determinative. Since the judge could, prior to the instant decision, on the judge's own motion set aside the referee decision and conduct a hearing "de novo," the constitutional requirements of *Edgar M.* were met.

However, since the hearing "de novo" before the judge constitutes a second trial for the same offense charged in the referee determination, the retrial results in double jeopardy. Elimination of rehearings "de novo" in order to meet the double jeopardy violation makes referee hearings determinative and hence violative of the *Edgar M.* rule.

## BASIC FAIRNESS

The conclusion here reached is consistent with considerations of fair play. Assume that a juvenile is brought before a referee for an adjudicative hearing. Should the juvenile testify? If the juvenile does not testify, he may be found to have committed the offense. If he does testify, and a rehearing is granted, as in this case, he has revealed his defense strategy; a revelation that may well be used against him in a subsequent trial before a judge.

Consider a further problem. Should the juvenile in a referee hearing call all defense witnesses? If the juvenile does call all his witnesses and a rehearing is granted, then the people are prepared to meet the full defense before the judge. If the juvenile holds back, is found to have committed the offense, and the judge does not grant a rehearing, then the juvenile has lost the chance to present that portion of the defense. At the very least, the juvenile reveals the thrust of his defense at the referee hearing.

It has been asserted that the referee system actually permits prosecutorial discovery, which is not otherwise available under normal discovery procedures. There are no specific statutory discovery provisions provided for the juvenile court. In this sense, a referee hearing may be to the People what a preliminary hearing is to the defense in criminal court. Although the new juvenile court rules do provide discovery procedures which attempt to reflect statutory and judicially developed rules of criminal discovery in the adult court, prosecutorial discovery is limited in the juvenile court in the same way it is limited in adult court. (Cal. Rules of Court, rule 1341.)

Lastly, it seems apparent that the more trials for the same offense, the greater the likelihood that a conviction of an innocent accused will be achieved.

For all these reasons, I concur that the constitutional prohibition against double jeopardy is here violated, a conclusion consistent with considerations of basic fairness. The writ of prohibition should be issued.

Bird, C. J., and Tobriner, J., concurred.

A petition for a rehearing was denied May 30, 1978, and the opinion was modified to read as printed above.