[Civ. No. 42239. First Dist., Div. Three. Nov. 28, 1978.]

In re RAYMOND P., a Person Coming Under the Juvenile Court Law.
JOSEPH J. BOTKA, as Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
RAYMOND P., Defendant and Appellant.

**COUNSEL**

Darrel C. Horsted, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Gloria F. DeHart, Thomas A. Brady and Laurence K. Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**FEINBERG, J.**—Appellant, a minor, appeals from a juvenile court ruling that he came within the provisions of section 602 of the Welfare and Institutions Code,[1] by reason of violation of Penal Code section 12020 (felony possession of a rifle having a length of less than 26 inches) and section 12031, subdivision (a) (misdemeanor possession of a firearm). The referee of the San Francisco Juvenile Court, who heard the matter first, dismissed the section 602 petition at the close of the People's evidence, because subpoenaed defense witnesses, police officers, had failed to appear. A juvenile court judge then reheard the case de novo, and sustained the petition. Appellant complains that the rehearing of his case amounted to placing him twice in jeopardy for the same offense. We hold that his plea of double jeopardy is well taken, and reverse the judgment of the juvenile court.

On August 4, 1977, a referee of the juvenile division of the superior court heard evidence concerning the following matters: (1) a petition filed July 15, 1977, alleging that appellant was a minor coming within section 602 by virtue of his violation of Penal Code sections 12021 and 12031, subdivision (a); and (2) appellant's motion to suppress evidence in connection with the alleged Penal Code violations. The referee decided to combine appellant's motion to suppress with the section 602 proceeding and stated that she would rule on the motion to suppress at such time as the issue was reached in the prosecution's case on the section 602 proceeding. The prosecution presented its evidence as to both of these issues which consisted of the sworn testimony of the arresting officer, the contraband rifle itself, and a weapon that had been discovered in the possession of a companion of appellant. Having presented its case on both issues, the prosecutor rested.

At the close of the prosecutor's evidence, defense counsel stated that he had subpoenaed five police officers who had been present at appellant's

---

[1]Hereafter all section references are to the Welfare and Institutions Code unless stated otherwise.

arrest, and that none of the five officers had appeared. Counsel indicated that he had not discussed the case with any of the officers, and thus could make no offer of proof concerning their anticipated testimony. However, he stated that he intended to use their testimony to impeach the testimony of the arresting officer concerning the circumstances of the search.

The referee granted a continuance until the next day so that defense counsel would have an opportunity to produce his witnesses. However, none of the five officers appeared the next day, which was the fifteenth judicial day since appellant had been ordered detained in connection with the section 602 petition. The referee stated that she would have considered it "a miracle" if the testimony of any of the officers would have defeated the prosecutor's case. Nevertheless, she stated that she had no choice but to dismiss the petition on the ground that defendant had been denied the opportunity to present his case, and therefore to proceed to judgment would deny him due process of the law.

The prosecutor applied to the superior court for a rehearing of the dismissal of the petition, pursuant to section 558.[2] The superior court judge stated that the dismissal had been erroneous, and that the referee should have merely continued the matter. The court then heard evidence on the jurisdictional petition and the motion to suppress evidence and entered judgment sustaining the petition. Appellant was committed to the California Youth Authority.

*Jeopardy Attached at the August 4*
*Hearing Before the Referee*

In *Jesse W. v. Superior Court* (1978) 20 Cal.3d 893 [145 Cal.Rptr. 1, 576 P.2d 963], the Supreme Court held that jeopardy attaches when a section 602 hearing before a referee is "entered upon." Recently, we held in *In re Donald L.* (1978) 81 Cal.App.3d 770 [146 Cal.Rptr. 720], that where a section 602 hearing and a motion to suppress in connection therewith are pending before a referee, if the referee hears the motion to suppress first, grants it, and then dismisses the section 602 proceeding, jeopardy has not attached because the section 602 proceeding has not

---

[2]While the prosecutor's application purported to be pursuant to section 558 (renumbered now as § 252), that section grants *only* the minor or his parent or guardian a right to apply for a rehearing. We can find no statutory authority for the state to apply for rehearing.

The juvenile court, however, treated the matter as a rehearing granted on its own motion. (See § 253.)

been "entered upon." Here, however, the record clearly discloses that the prosecution's evidence was presented both on the issue of the motion to suppress *and* on the section 602 petition. Thus, the jurisdictional hearing was "entered upon" when the arresting officer was sworn and, in accordance with *Jesse W.,* jeopardy attached at that time.

But, the determination that jeopardy attached does not resolve the question of whether the double jeopardy clause barred retrial upon the termination of the hearing. The resolution of that question depends on the character of the proceedings after the point in time at which jeopardy first attached. (*Jesse W. v. Superior Court, supra,* 20 Cal.3d at p. 897.)

### The Referee's Dismissal of the Petition
### Did Not Result From Resolution of Factual
### Issues in Favor of Appellant

The referee in this case stated that she was not dismissing the petition because of any defect in the prosecutor's case, but only because the defense had not had the opportunity to present its case. The dismissal did not represent a determination that appellant was not guilty of the charged offense. Thus, *Jesse W.* is distinguishable from this case. In *Jesse W.,* the court held that the minor was exposed to double jeopardy when his section 602 petition was reheard de novo after a referee had "absolved . . . [the minor] of misconduct charged in a petition." (20 Cal.3d at p. 895.) That case did not address the question of whether double jeopardy considerations would foreclose a rehearing of a section 602 petition which was dismissed, not on its merits, but because of some purported due process procedural defect in the first hearing of the petition.

Since, as discussed above, *Jesse W.* did establish that, under the Fifth Amendment jeopardy attaches when a section 602 hearing is begun, we turn to cases interpreting the once in jeopardy clause to determine whether the dismissal in this case constituted a bar to the trial de novo by the juvenile court judge.

### Since the Referee Terminated the Hearing,
### Sua Sponte, *the Fifth Amendment Bars a*
### Rehearing Unless There Was Legal Necessity
### for the Termination

Appellant did *not* move to have the petition dismissed. Nor is the fact that appellant argued that it would violate appellant's due process

rights if the referee decided the case without having taken testimony from appellant's subpoenaed, but missing, police officer witnesses, the equivalent of a motion for dismissal. (*People* v. *Compton* (1971) 6 Cal.3d 55, 62 [98 Cal.Rptr. 217, 490 P.2d 537]; *Curry* v. *Superior Court* (1970) 2 Cal.3d 707 [87 Cal.Rptr. 361, 470 P.2d 345]; *People* v. *Boyd* (1972) 22 Cal.App.3d 714, 717 [99 Cal.Rptr. 553].) We conclude that the dismissal was a dismissal *sua sponte* by the referee.

In *United States* v. *Jorn* (1971) 400 U.S. 470 [27 L.Ed.2d 543, 91 S.Ct. 547], the court held that a trial judge should declare a mistrial[3] *sua sponte* only where the termination of the proceedings is necessary in the interests of justice. Where, as in *Jorn*, a trial court terminates proceedings apparently without consideration of less drastic alternatives, the Fifth Amendment bars any subsequent retrial.

The referee in this case had several alternatives less drastic than dismissal of the petition. As the judge who subsequently reheard the case pointed out, she could have granted a continuance. It appears from this record that the referee thought the time limits for the commencement of hearings of section 602 petitions, set forth in section 657, and inferentially section 700.5, precluded her from granting a continuance. We believe the referee misconstrued those sections, but even assuming she was correct, there is no showing in this record that appellant was unwilling to waive the time limitations. (See § 682.) More importantly, a bare showing that defense witnesses had not presented themselves at the hearing did not require either a continuance or a dismissal, since defense counsel had made no showing that the testimony of the absent witnesses would be of benefit to his client. (*People* v. *Sandoval* (1977) 70 Cal.App.3d 73 [138 Cal.Rptr. 609].) We conclude, therefore, that there was no legal necessity for the dismissal.

Thus far in our analysis we have shown that appellant was once in jeopardy as a result of the section 602 hearing before the referee. We have shown, too, that since the dismissal by the referee was *sua sponte*, for reasons other than those relating to the guilt or innocence of appellant and there was no legal necessity for the dismissal, the bar of once in

---

[3]In *Lee* v. *United States* (1977) 432 U.S. 23 [53 L.Ed.2d 80, 97 S.Ct. 2141], the Supreme Court concluded that a dismissal on grounds unrelated to guilt or innocence is the equivalent of a mistrial for purposes of double jeopardy analysis. Relying on *Lee*, cases involving mistrials, as well as dismissals, will be cited herein. (See also *United States* v. *Scott* (1978) 437 U.S. 82, 93 [57 L.Ed.2d 65, 75-76, 98 S.Ct. 2187], where it is to be noted that the defendant *moved* to dismiss the case at trial after the prosecution rested on speedy trial grounds and the court granted the motion.)

jeopardy could be successfully raised in a subsequent proceeding where the charged person is again placed in jeopardy for the same offense.

The question that remains is whether a trial de novo in a section 602 petition by a juvenile court judge, after a referee has conducted a hearing thereon and then dismissed the petition, places the minor in jeopardy a second time.

*Jesse W.* v. *Superior Court, supra,* 20 Cal.3d 893, held that it did. Ordinarily, that would dispose of the question for this court. However, *Jesse W.* was decided on federal constitutional double jeopardy grounds. On October 30, 1978, the United States Supreme Court granted California's petition for certiorari in *Jesse W.,* 439 U.S. 922 [58 L.Ed.2d 315, 99 S.Ct. 304], ordered the judgment of the California Supreme Court vacated and remanded the case to that court for further consideration in light of *Swisher* v. *Brady* (1978) 438 U.S. 204 [57 L.Ed.2d 705, 98 S.Ct. 2699]. Therefore, we proceed to consider the impact of *Swisher* upon *Jesse W.*

In *Swisher,* at issue was a section of Maryland Rules of Court, specifically rule 911, dealing with juvenile hearing proceedings in situations analogous to our section 602 proceedings. Under rule 911, masters may be used in juvenile proceedings, but

(1) Their " 'findings, conclusions, recommendations or . . . orders' " are *only* proposals.

(2) There can be no trial de novo.

(3) Any party to the action, including the state, may file exceptions to the master's proposals, in which case the juvenile court judge can act upon the exceptions only on the basis of the record made before the master and such additional relevant evidence to which the parties do *not* object. The judge may accept, reject, or modify the master's proposals or remand the matter back to the master.

(4) If there are no exceptions filed, the juvenile court judge may adopt the referee's proposals, or remand the matter back to the referee or conduct further hearings supplemented by additional evidence to which no party has objected. (*Swisher* v. *Brady, supra,* at pp. 210-213 [57 L.Ed.2d at pp. 712-713].)

The narrow issue, as the court saw it, was whether the State of Maryland, in filing exceptions to a master's proposals, requires an accused to stand trial a second time. (*Ibid.,* at p. 215 [57 L.Ed.2d at p. 715].)

The *Swisher* court noted that the double jeopardy clause realizes several purposes:

(1) It prevents the state from having a second opportunity to marshall evidence it failed to adduce at the first hearing.

(2) It avoids the risk that an innocent man may be convicted by the device of lodging the power to adjudge guilt in a series of persons or groups each having the authority to make such a binding determination.

(3) It prevents the state from subjecting an accused "to the embarrassment, expense and ordeal of a second trial." (*Id.,* at p. 216 [57 L.Ed.2d at p. 716].)

The court then points out that the Maryland procedure does not frustrate any of these purposes:

(1) The only evidentiary hearing is before the master, the state can introduce no new evidence before the judge unless the minor consents;

(2) there is only one binding determination of guilt or innocence that is made by the judge since the master's proposals are only such—proposals;

(3) the hearing before the judge on the exceptions is in no way comparable to a trial, thus, there is no second trial.

The court concluded, therefore, that Maryland rule 911 contemplates "a *single* proceeding which begins with a master's hearing and culminates with an adjudication by a judge." (Italics added.) (*Id.,* at p. 215 [57 L.Ed.2d at p. 715].) Thus, there is no double jeopardy.

If we compare the California procedure in these aspects, it is manifest that the California procedure is radically different from that provided in Maryland rule 911 and those differences directly impinge upon the double jeopardy prohibition.

Thus, in California, section 254 (formerly § 560) provides: "All rehearings of matters heard before a referee shall be before a judge of the juvenile court and shall be conducted *de novo.*" (Italics added.)

Therefore, the state does have "that forbidden 'second crack' " before the juvenile court judge at adducing evidence it failed to provide at the hearing before the referee. (*Swisher* v. *Brady, supra,* at p. 216 [57 L.Ed.2d at p. 715].)

Further, the minor is subjected "to the embarrassment, expense, and ordeal of a second trial," proscribed by the once in jeopardy clause, for in the language of *Swisher,* the hearing before the juvenile court judge in California is a "full-blown second trial." (*Ibid.,* at p. 217 [57 L.Ed.2d at p. 716].)

The remaining purpose of the once in jeopardy clause, as articulated in *Swisher,* is to avoid the risk that an innocent accused may be convicted by taking the issue of guilt or innocence to a series of fact-finders, each empowered to make a final determination. Here, California law appears to be opaque.

Section 250 (formerly § 556) provides in relevant part: " . . . all orders of a referee . . . shall become immediately effective, subject also to the right of review as hereinafter provided, and shall continue in full force and effect until vacated or modified upon rehearing by order of the judge of the juvenile court. In a case in which an order of a referee becomes effective without approval of a judge of the juvenile court, it becomes final on the expiration of the time allowed by Section 252 for application for rehearing, if application therefor is not made within such time and if the judge of the juvenile court has not within such time ordered a rehearing pursuant to Section 253."

Section 251 (formerly § 557) provides: "The judge of the juvenile court, or in counties having more than one judge of the juvenile court, the presiding judge of the juvenile court may establish requirements that any or all orders of referees shall be expressly approved by a judge of the juvenile court before becoming effective."[4]

Section 800 provides in relevant part: "A judgment or decree of a juvenile court *or final order of a referee which becomes effective without*

---

[4]It does not appear that the San Francisco juvenile court has adopted such a requirement.

*approval of a judge of the juvenile court assuming jurisdiction and declaring any person to be a person described in Section 601 or 602 . . . may be* appealed from in the same manner as any final judgment, . . ." (Italics added.)

On its face, it would appear that the Legislature has granted final adjudicatory powers to referees in juvenile court proceedings. However, the decision of the California Supreme Court in *In re Edgar M.* (1975) 14 Cal.3d 727 [122 Cal.Rptr. 574, 537 P.2d 406], has cast substantial doubt as to whether a juvenile court referee has power to make any final determination in light of article VI, section 22 of the California Constitution.

Insofar as the case at bench is concerned, *In re Edgar M.* squarely holds that, where the minor files a petition for rehearing after a referee's determination in a section 602 proceeding adverse to the minor, the referee's determination is not final until the juvenile court judge has acted upon the petition.

It may be argued, therefore, that in California, as in Maryland, a referee's decision is not final.

In our view, we need not analyze this issue further for resolution of this question is not necessary to our decision.

Implicit in *Swisher* is the proposition that when the referee begins the proceeding to determine guilt or innocence, jeopardy attaches for the issue, as the court framed it, was whether the hearing before the juvenile judge was a "second" trial which placed the minor in jeopardy a *second* time. Obviously, there would be no need to consider twice in jeopardy if the minor had not been put in jeopardy the first time before the referee.[5]

Thus, in the case at bench, jeopardy attached when the referee began the section 602 proceeding. The *sua sponte* dismissal by the referee on grounds unrelated to the question of guilt or innocence was the equivalent of a mistrial. There was no legal necessity for the dismissal; therefore, the bar of once in jeopardy was a defense to any subsequent hearing wherein the issue of guilt or innocence of the same offense was to

---

[5]The court so suggests but goes on to say: "It is not essential to decision in this case, however, to fix the precise time when jeopardy attaches." (*Swisher* v. *Brady, supra,* at p. 215, fn. 12 [57 L.Ed.2d at p. 715] (and see dis. opn. of Marshall, J., at p. 219 [57 L.Ed.2d at p. 717].)

be litigated. Appellant was subjected to a hearing de novo—a "full-blown" trial before the juvenile court judge wherein the issue of his guilt or innocence was to be determined. Therefore, his plea of once in jeopardy should have been sustained.

In our view, *Swisher* not only sustains the decision in *Jesse W.*, it impels such a decision.

In light of our holding in the case, it is not necessary to reach the other issues raised by appellant.

Appellant heretofore moved to augment the record; the augmentation sought is irrelevant to our disposition. The motion is therefore denied.

The order declaring appellant a ward of the court and committing him to the California Youth Authority is reversed, and the court below is directed to dismiss the section 602 petition.

Scott, Acting P. J., and Jenkins, J.,* concurred.

A petition for a rehearing was denied December 28, 1978, and respondent's petition for a hearing by the Supreme Court was denied January 24, 1979.

---

*Assigned by the Chairperson of the Judicial Council.