[S.F. No. 23580. Dec. 12, 1979.]

JESSE W., a Minor, Petitioner, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

42

COUNSEL

David R. Packard and Robert L. Walker for Petitioner.

No appearance for Respondent.

George Deukmejian, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Ronald E. Niver, Deputy Attorneys General, for Real Party in Interest.

## OPINION

CLARK, J.—This cause was remanded by the United States Supreme Court "for further consideration in light of *Swisher* v. *Brady,* 438 U.S. 204 [57 L.Ed.2d 705, 98 S.Ct. 2699] (1978)," after that court granted the People's petition for writ of certiorari and vacated our judgment (*Jesse W.* v. *Superior Court* (1978) 20 Cal.3d 893 [145 Cal.Rptr. 1, 576 P.2d 963]). *(California* v. *Jesse W.* (1978) 439 U.S. 922 [58 L.Ed.2d 315, 99 S.Ct. 304].) We have considered the Supreme Court's opinion in *Swisher* and conclude that the treatment of issues in our earlier opinion is in all respects consistent with the holdings and views expressed by that court. Accordingly, we again order the writ prayed for by petitioner to issue.

The facts and proceedings on which the issues are presented are reported at 20 Cal.3d 893, pages 895-896. Briefly, the minor petitioner seeks to restrain respondent juvenile court from proceeding pursuant to statute (Welf. & Inst. Code, former § 559, now § 253)[1] to redetermine his status as a ward of that court after a referee of such court had absolved petitioner of charged misconduct necessary to the determination of wardship. (See § 602.) The purported rehearing was ordered by a judge of respondent court acting pursuant to sections 559 and 560 (now §§ 253 and 254, respectively). Those sections provide for a rehearing "de novo" before a judge of the juvenile court of "any matter heard before a referee."

Petitioner claimed that the de novo rehearing would expose him a second time to jeopardy, relying particularly on *Breed* v. *Jones* (1975) 421 U.S. 519 [44 L.Ed.2d 346, 95 S.Ct. 1779]. We unanimously agreed.

---

[1] Unless otherwise provided, all statutory references herein are to sections of the Welfare and Institutions Code.

In *Swisher* the Supreme Court held that juvenile court procedures in the State of Maryland did not infringe jeopardy prohibitions. The issue now presented on remand is whether our procedures are sufficiently different from those in Maryland to require the different treatment our earlier judgment accorded them. We conclude there are significant differences—procedural differences creating a second exposure to jeopardy in the one case but not in the other. We carefully noted those distinctions in our earlier opinion.

■ It is now undisputed that jeopardy attaches in juvenile proceedings (*Breed* v. *Jones, supra,* 421 U.S. 519) when "entered upon" whether before a juvenile court judge or referee (*Richard M.* v. *Superior Court* (1971) 4 Cal.3d 370, 376 [93 Cal.Rptr. 752, 482 P.2d 664]), notwithstanding that a referee's findings and orders may be advisory only. (See *In re Edgar M.* (1975) 14 Cal.3d 727, 735-736 [122 Cal.Rptr. 574, 537 P.2d 406].) We held in our earlier opinion that the advisory nature of a referee's findings and orders were such that no second exposure to jeopardy occurred when such findings and orders were merely reviewed and acted upon by the court: "In such instance there is but one continuing proceeding leading to but a single adjudication." (*Jesse W.* v. *Superior Court, supra,* 20 Cal.3d 893, 898.) We approved such "review" proceedings by a juvenile court judge, and held they did not infringe any constitutional prohibition.

Our statutory proceedings were held deficient when—in place of juvenile court review and action on a referee's recommended findings and orders—the juvenile court abandons those findings and recommendations and embarks upon a rehearing de novo. "A rehearing de novo 'is in no sense a review of the hearing previously held, but is a complete trial of the controversy, the same as if no previous hearing had ever been held.'. . . The question thus becomes whether there is a second exposure to jeopardy *after* an initial exposure in proceedings before the referee, the referee's determinations are abandoned rather than reviewed, and another, independent proceeding is commenced before a juvenile court judge." (*Jesse W.* v. *Superior Court, supra,* 20 Cal.3d 893, 898.)

The Maryland procedures at issue in *Swisher* are akin to the "review" proceedings approved in our opinion. Rule 911 of the Maryland Rules of Procedure was deemed by the Supreme Court and the parties in *Swisher* to be the prevailing rule governing use of masters in Mary-

land juvenile court proceedings.[2] (*Swisher* v. *Brady, supra,* 438 U.S. 204.) Rule 911 is set forth in its entirety in the footnote.[3] Pursuant to that rule, a master—"a ministerial officer, and not a judicial officer" (*In re Anderson* (1974) 272 Md. 85 [321 A.2d 516, 527])—submits "proposed findings of fact, conclusions of law, recommendations and proposed orders" (fn. 3, *ante* ) to a judge of the juvenile court. The involved minor, by exercising options, controls receipt by the court of additional evidence if any. (*Swisher* v. *Brady, supra,* 438 U.S. 204, 210-211 [57 L.Ed.2d 705, 711-712].) The minor but not the state can elect a de novo hearing. The state is entitled to a hearing on the record supplemented only by evidence to which the minor does not object. The master's findings are of no import until confirmed, modified or revised by the court. (Fn. 3, *ante.* ) The juvenile court judge—acting on the master's record as it may be supplemented with the minor's approval and the master's recommendations—is charged with making findings and the adjudication. There is no provision for a rehearing de novo unless consented to by the minor. Such procedures were held in *Swisher* not to infringe Fifth Amendment jeopardy provisions.

---

[2]This rule was promulgated while *Swisher* and companion cases were proceeding through state appellate and federal courts. Rule 911 was promulgated in response to the decision of the federal district court in *Aldridge* v. *Dean* (D.Md. 1975) 395 F.Supp. 1161, holding prior Maryland procedures to be substantively similar to our law and violative of the jeopardy clause of the Fifth Amendment. *Aldridge* is cited in our earlier opinion in support of our judgment. (*Jesse W.* v. *Superior Court, supra,* 20 Cal.3d 893, 899.)

[3]Rule 911 provides: "a. Authority [¶] 1. Detention or Shelter Care. [¶] A master is authorized to order detention or shelter care in accordance with Rule 912 (Detention or Shelter Care) subject to an immediate review by a judge if requested by any party. [¶] 2. Other Matters. [¶] A master is authorized to hear any cases and matters assigned to him by the court, except a hearing on a waiver petition. The findings, conclusions and recommendations of a master do not constitute orders or final action of the court. [¶] b. Report of the Court. [¶] Within ten days following the conclusion of a disposition hearing by a master, he shall transmit to the judge the entire file in the case, together with a written report of his proposed findings of fact, conclusions of law, recommendations and proposed orders with respect to adjudication and disposition. A copy of his report and proposed order shall be served upon each party as provided by Rule 306 (Service of Pleadings and Other Papers). [¶] Review by Court if Exceptions Filed. [¶] Any party may file exceptions to the master's proposed findings, conclusions, recommendations or proposed orders. Exceptions shall be in writing, filed with the clerk within five days after the master's report is served upon the party, and shall specify those items to which the party excepts, and whether the hearing is to be *de novo* or on the record. A copy shall be served upon all other parties pursuant to Rule 306 (Service of Pleadings and Other Papers). [¶] Upon the filing of exceptions, a prompt hearing shall be scheduled on the exceptions. An excepting party other than the State may elect a hearing *de novo* or a hearing on the record. If the State is the excepting party, the hearing shall be on the record, supplemented by such additional evidence as the judge considers relevant and to which the parties raise no objections. In either case the hearing shall be limited

The People now agree that the rehearing de novo provided for by our statutory scheme (§§ 253, 254) infringes Fifth Amendment jeopardy provisions. The Attorney General states in a brief filed following remand: "Since section 254 gives to the state the right to present new evidence at the rehearing, it is *pro tanto* constitutionally repugnant, violating the Double Jeopardy Clause of the Fifth Amendment." This is essentially the holding in our earlier opinion and the Attorney General now deems it to be compelled by language in *Swisher* that "[a] central purpose 'of the prohibition against successive trials' is to bar 'the prosecution [from] another opportunity to supply evidence which it failed to muster in the first proceeding.'" (*Swisher* v. *Brady, supra,* 438 U.S. 204, 215-216 [57 L.Ed.2d 705, 715].)

Notwithstanding its concession, the People argue that sections 253 and 254 should now be construed to provide only for review of a referee's findings and recommendations, as is provided for in rule 911 of the Maryland Rules of Procedure approved in *Swisher*: "If deletion of the tainted provision would leave a coherent statute complete in itself, the critical inquiry is whether the Legislature would have adopted the entire statute had it seen its partial invalidity." (See *People* v. *Navarro* (1972) 7 Cal.3d 248, 261 [102 Cal.Rptr. 137, 497 P.2d 481].)

As indicated in our original opinion we did not—and do not now—foreclose constitutional application of provisions for judicial review of referee determinations. However, section 253 purports to provide for "a rehearing of any matter heard before a referee," while section 254 provides that "[a]ll rehearings of matters heard before a referee . . . *shall be conducted de novo.*" (Italics added.) The People seek a construction of these provisions which would, in effect, render section 254 inoperative and limit a "rehearing" pursuant to section 253 to only "review," unless the receipt of further evidence is consented to by the concerned minor. This, according to the People, would accomplish the legislative preference had constitutional invalidity of a rehearing de novo been foreseen.

---

to those matters to which exceptions have been taken. [¶] d. Review by Court in Absence of Exceptions. [¶] In the absence of timely and proper exceptions, the master's proposed findings of fact, conclusions of law and recommendations may be adopted by the court and the proposed or other appropriate orders may be entered based on them. The court may remand the case to the master for further hearings, or may, on its own motion, schedule and conduct a further hearing supplemented by such additional evidence as the court considers relevant and to which the parties raise no objection. Action by the court under this section shall be taken within two days after the expiration of the time for filing exceptions."

█ █ █ █ The People propose the scope of review of referee findings and recommendations be made similar to that in habeas corpus reference matters.[4] A construction of sections 253 and 254 to provide procedures similar to those in such references would—according to the People—comply with both *Swisher* and our constitutional requirements.

It is not as clear as the People suggest that the Legislature would have preferred to save the statute without rehearing de novo provisions. If the statute is construed as urged by the People, we would implement a procedure whereby the ultimate trier of fact would not hear testimony or observe witnesses, but nevertheless would make findings and adjudications on the record. We might assume that the Legislature, because it provided only for a rehearing de novo and no other kind of rehearing, rejected the kind of "review" rehearing suggested by the People. While it appears the Supreme Court in *Swisher* held there to be no constitutional infirmity in such a procedure, this does not necessarily mean our Legislature would have preferred something akin to the Maryland procedure if a rehearing de novo was held to be unavailable.

We conclude we are not prepared to hold that the statutory provisions—after emasculation constitutionally mandated—would leave "a coherent statute complete in itself" within legislative contemplation. (See *People* v. *Navarro, supra,* 7 Cal.3d 248, 260.) Given the remnants of the enactment, we cannot speculate on legislative preference. What procedures should now be adopted within recognized constitutional limitations is a legislative matter better left to the Legislature.[5]

---

[4]"[R]eferee's findings of fact [in a habeas corpus reference] are…not binding on this court, and we may reach a different conclusion on an independent examination of the evidence produced at the hearing he conducts even where the evidence is conflicting." (*In re Branch* (1969) 70 Cal.2d 200, 203, fn. 1 [74 Cal.Rptr. 238, 449 P.2d 174].) Such findings are nevertheless entitled to great weight because of the referee's "opportunity to observe the demeanor of the witnesses and weigh their statements in connection with their manner on the stand…." (*In re Atchley* (1957) 48 Cal.2d 408, 411 [310 P.2d 15].)

[5]We are not unmindful of the real concerns for the future of the juvenile court referee program should the Legislature fail to initiate remedial action following finality of our judgment. (See conc. opn. of Thompson, J., *Jesse W.* v. *Superior Court, supra,* 20 Cal.3d 893, at p. 899.) We noted in our earlier opinion that "[b]ecause a referee's determination favorable to a juvenile cannot be reheard, it is not merely a subordinate judicial act and is constitutionally proscribed. (See *In re Edgar M., supra,* 14 Cal. 3d 727.)" (*Id.,* at p. 899, fn. 5) We further noted that it is "apparent a referee's usefulness in hearing the jurisdictional issue will be severely limited." (*Id.*) We did not then and do not now purport to define those limits, as the issues were not squarely presented and fully briefed. However, such issues are considered in *In re Peronne C., post,* at page 49 [160 Cal.Rptr. 704, 603 P.2d 1300].

█ We conclude as we did in our original opinion that if petitioner is subjected to rehearing de novo procedures provided for in sections 253 and 254 (formerly §§ 559 and 560, respectively), he would be exposed to jeopardy a second time contrary to Fifth Amendment prohibitions. Our conclusion is in all respects consistent with *Swisher* v. *Brady, supra,* 438 U.S. 204. "*Swisher* not only sustains the decision in *Jesse W.,* it impels such a decision." (*In re Raymond P.* (1978) 86 Cal. App.3d 797, 808 [150 Cal.Rptr. 537].)

Let a peremptory writ of prohibition issue as prayed for.

Tobriner, J., Mosk, J., Richardson, J., and Manuel, J., concurred.

**BIRD, C. J.,** Concurring.—When this court initially decided this case, I agreed with the views expressed in the concurring opinion by Justice Thompson. (See *Jesse W.* v. *Superior Court* (1978) 20 Cal.3d 893, 899 et seq. [145 Cal.Rptr. 1, 576 P.2d 963].) I still adhere to those views. However, I join with my colleagues in holding that the People's statutory construction arguments lack merit. Further, today's decision by this court is consistent with the opinion of the Supreme Court in *Swisher* v. *Brady* (1978) 438 U.S. 204 [57 L.Ed.2d 705, 98 S.Ct. 2699].